COMMONWEALTH of Pennsylvania, Appellee,

v.

**Thomas Donald PADDEN, Appellant.**

Superior Court of Pennsylvania.

Submitted March 19, 2001.
Filed Aug. 23, 2001.

Thomas D. Padden, appellant, pro se.

Andrew J. Jarbola, Assistant District Attorney, Scranton, for Com., appellee.

Before: EAKIN, J., CERCONE, President Judge Emeritus, and KELLY, J.

CERCONE, President Judge Emeritus.

¶ 1 Appellant, Thomas Padden, appeals, *pro se*, from the May 9, 2000 order denying, in part, his petition for relief filed pursuant to the Post Conviction Relief Act (PCRA).[1] We affirm in part and reverse in part and remand for an evidentiary hearing.

¶ 2 The underlying facts of this case have been set forth by our Court, in its previous memorandum disposition of Appellant's direct appeal, as follows:

During the afternoon of April 8, 1995, Ms. Pamela Jones was working as a clerk in Gerrity's Super Market [hereinafter "Gerrity's"] when an older male customer with brown hair took his place in line at the service counter. She asked if she could help him. Appellant placed a brown bag on the desk and said, "Put the money in the bag." Notes of Testimony, ("N.T"), 10/31/96, at 105. Appellant then lifted his shirt and revealed what looked to Ms. Jones like a silver gun in his waistband. Ms. Jones was too frightened to look directly at [A]ppellant any further but placed the cash from the register into the bag as directed. Appellant grabbed the bag and fled the store.

Ms. Jones described the perpetrator to police over the telephone shortly after [A]ppellant fled. Meanwhile, a store employee and a soft drink sales representative, both of whom had been in the parking lot, entered the store and were told what happened. They pursued [A]ppellant but lost sight of him briefly near the Price Chopper, a neighboring store in the shopping center. Both testified they subsequently saw police apprehend the man they had been chasing on the other side of an embankment behind the Price Chopper. Mr. Patrick Padden, son of the owner of a bar near the Price Chopper and not related to [A]ppellant, heard about the robbery and assisted in the search. He found a toy silver gun and part of a ripped twenty dollar bill on the ground behind the Price Chopper. The officers who apprehended [A]ppellant testified that when they stopped and searched him, they recovered a partially ripped bag full of money and one-half of a torn twenty dollar bill. The two halves of the twenty dollar bill matched. Finally Ms. Jones positively identified [A]ppellant several minutes after the robbery in a show-up.

*Commonwealth v. Padden*, 455 Pa.Super. 676, 687 A.2d 859 (Pa.Super.1996) (unpublished memorandum filed 10/9/96, slip memorandum at 1–2.

¶ 3 Appellant was arrested and charged with multiple offenses in connection with this incident. Attorney Alyce Hailstone Farrell, employed on a part-time basis by the Lackawanna County Public Defender's Office, was appointed to represent Appellant. Attorney Farrell represented Appellant during his jury trial before the Honorable James M. Munley which was held on November 1, 1995. The jury convicted Appellant of the offenses of robbery, simple assault and theft by unlawful taking.[2] He was sentenced by Judge Munley to seven (7) to fourteen (14) years incarceration for his robbery conviction, and he was given a consecutive sentence of three (3) months to two (2) years on the conviction for simple assault. The conviction for

---

1. 42 Pa.C.S.A. §§ 9541–9546.

2. 18 Pa.C.S.A. §§ 3701(a)(i)(ii), 2701(a)(3), and 3921(a) respectively.

theft by unlawful taking merged for sentencing purposes.

¶ 4 Appellant, still represented by Attorney Farrell, next pursued a timely direct appeal with our Court, which subsequently affirmed his judgment of sentence. *See Padden, supra.* Appellant, through Attorney Farrell, then filed a petition for allowance of appeal with our Supreme Court that was denied on April 8, 1997. *See Commonwealth v. Padden,* 547 Pa. 753, 692 A.2d 564 (1997). On December 1, 1997, Appellant filed a *pro se* PCRA petition, his first, with the Trial Court in which he raised forty four (44) separate claims of alleged Trial Court error and alleged ineffective assistance of trial counsel as well as an additional averment of the ineffective assistance of appellate counsel for failing to "properly prepare and argue before the Supreme Court all of the issues raised in the Appellant's Brief in the Superior Court on Direct Appeal." *See* Pro Se PCRA Petition, filed 12/1/97.

¶ 5 On January 9, 1998, the Honorable John Cottone, who had been assigned this case, appointed Attorney Robert T. Gownley to represent Appellant and directed Attorney Gownley to file an amended PCRA petition on Appellant's behalf by February 10, 1998. *See* Trial Court Order, docketed 1/9/98, docket entry # 31. On February 10, 1998 Appellant, *pro se,* filed a supplemental PCRA petition raising two additional claims of trial counsel's ineffectiveness and an added claim of appellate counsel's ineffectiveness. The Trial Court issued another order, docketed that same day, which allowed Attorney Gownley until March 12, 1998 to file an amended PCRA on Appellant's behalf or to "take other appropriate action." *See* Trial Court Order, docketed 2/10/98.

¶ 6 However, Attorney Gownley filed nothing on behalf of Appellant until April 26, 1999 when he filed a petition with the Trial Court seeking leave to withdraw.[3] The basis for this request was that Attorney Gownley had discovered a potential conflict of interest, namely the fact that he had actively represented the store, Gerrity's, that had been victimized in the robbery for which Appellant had been convicted. The PCRA Court granted Attorney Gownley's request and entered an order on April 26, 1999 allowing him to withdraw as counsel. This order also appointed Attorney John Coury to represent Appellant and ordered Attorney Coury to file an amended PCRA petition within thirty (30) days.

¶ 7 Attorney Coury complied with the Trial Court order and filed an amended PCRA petition on May 25, 1999. Because of information obtained from Attorney Gownley, Appellant specifically alleged in this amended PCRA petition that Attorney Farrell had a conflict of interest in her representation of Appellant at trial and on appeal, which had not been disclosed to him. *See* Amended PCRA Petition, filed 5/25/99, ¶ 7(A). Appellant averred that Attorney Farrell was also a member of the same law firm that served as legal counsel for Gerrity's at the time of the robbery and also during Appellant's trial, his sentencing and his direct appeal. *Id.* Appellant alleged that because of this conflict of interest his right to a fair trial had been prejudiced. *Id.* In this amended petition, Appellant also pared his prior lengthy list of ineffective assistance of counsel claims to eight (8) specific allegations of Attorney Farrell's supposed ineffectiveness during trial and on direct appeal.

¶ 8 The Trial Court conducted an evidentiary hearing on this matter on September 17, 1999. Only Appellant was

---

**3.** This petition was joined by Appellant.

called to testify at this hearing by Attorney Coury. Attorney Farrell was not called to testify at this hearing; rather, an affidavit executed by her was offered into evidence. *See* N.T. PCRA Hearing, 9/17/99, at 3. In this affidavit, Attorney Farrell acknowledged that on November 1, 1995 she was employed as an associate in the law firm of Kreder, Brooks, Hailstone and Ludwig. Attorney Farrell also set forth that this law firm represented Gerrity's Market "[o]n November 1, 1995 and for a period of time prior thereto." *See* Affidavit of Alyce H. Farrell, Esquire, dated 9/16/99 at ¶ 3. However, Attorney Farrell averred that she "never provided any legal service or advice to Gerrity's, either before or after November 1, *1999*." *Id.* at ¶ 4 (emphasis supplied). She went on to state that "[o]n November 1, *1999* and for a period of time thereafter that went beyond my representation of Mr. Padden, I was not personally aware that the firm of Kreder, Brooks, Hailstone and Ludwig represented Gerrity's," *Id.* at ¶ 5 (emphasis supplied).

¶ 9 An affidavit from Andrew Hailstone, who is a partner in the law firm which represented Gerrity's in November of 1995, and, according to Appellant, also the father of Attorney Farrell, was also offered into evidence at the PCRA evidentiary hearing by Attorney Coury.[4] In this affidavit, Attorney Hailstone stated that he was a partner of this law firm in November of 1995 and recounted that Attorney Farrell had been employed at that time by the firm as a part time legal associate. *See* Affidavit of Andrew Hailstone, Esquire, dated 9/16/99, at ¶ 4. Attorney Hail-

stone claimed, though, that Attorney Farrell "never provided any legal services or advice to Gerrity's, either before or after November 1, 1995." *Id.* at ¶ 5.

¶ 10 On May 9, 2000, the Trial Court issued an opinion and order in which it vacated the sentence imposed on the Appellant for his conviction of simple assault but denied relief on all other issues, which had been raised in Appellant's amended PCRA petition. Appellant next filed a timely *pro se* notice of appeal with our Court. Appellant made clear to the Trial Court, via correspondence, that, while he understood that he was entitled to the representation of counsel in this direct appeal proceeding,[5] he nevertheless desired to proceed *pro se*. *See* Correspondence of Appellant, filed 6/9/2000. Thus, the Trial Court entered an order on June 21, 2000 terminating Attorney Coury's representation and granting Appellant's request to represent himself in this matter.

¶ 11 On appeal to our Court, Appellant raises the following issues for our consideration:

I. DID THE LOWER COURT ERR AND EXERCISE AN ABUSE OF DISCRETION IN FAILING TO FIND THAT A CONFLICT OF INTEREST EXISTED BETWEEN TRIAL COUNSEL AND THE APPELLANT WHERE THE TRIAL COUNSEL FOR THE APPELLANT WAS EMPLOYED BY THE SAME LAW FIRM WHICH ALSO REPRESENTS THE LEGAL INTERESTS OF THE VICTIM IN THIS PROSECUTION?

4. Our inspection of the record can find no factual evidence to either confirm or refute the assertion that Andrew Hailstone is Attorney Hailstone Farrell's father; however since the Commonwealth does not refute this assertion we will therefore assume it to be true for purposes of this appeal.

5. *See e.g.* Pa.R.Crim.P. 904(d) and *Commonwealth v. Quail*, 729 A.2d 571 (Pa.Super.1999).

II. DID THE LOWER COURT ERR OR EXERCISE AN ABUSE OF DISCRETION IN FAILING TO FIND THAT THE TRIAL COUNSEL FOR THE APPELLANT PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL, BY PROVIDING LEGAL COUNSELS (sic) IN VIOLATION OF HIS CONSTITUTIONALLY PROTECTED RIGHT TO COMPETENT COUNSEL WHICH IS FREE OF CONFLICT FOR ANY ONE, OR ALL OF THE FOLLOWING ENUMERATED ALLEGATIONS (sic) ON INEFFECTIVENESS WHICH SO UNDERMINED THE TRUTH DETERMINING PROCESS THAT NO RELIABLE ADJUDICATION OF GUILT OR INNOCENCE COULD HAVE TAKEN PLACE?

(a) Whether trial counsel was ineffective for failing to investigate the crime scene, where such an investigation would establish evidence to exonerate the appellant?

(b) Whether trial counsel was ineffective for failing to file pre-trial omnibus motions for the suppression of video evidence prior to viewing by the jury?

(c) Whether trial counsel was ineffective for failing to challenge the prosecutions (sic) introduction of currency evidence found in possession of appellant, as of that stolen, without establishing even an approximate amount?

(d) Whether trial counsel was ineffective for failing to request an examination of the trial jurors, or raise on direct appeal, appellant's appearance before the jury in handcuffs, shackles, and in the custody of officers of the Lackawanna Sheriff's office?

(e) Whether trial counsel was ineffective for failing to preserve for appeal by objection at sentencing that proceeded in violation of the Sixty (60) day limitation of Pennsylvania Rules of Criminal Procedure, Rule 1405, without the required explanation?

(f) Whether trial counsel was ineffective for failing to include in the Petition for Allowance of Appeal to the Supreme Court the issue of the appellants (sic) hearing impairment at the time of his trial?

III. DID PCRA COUNSEL FURTHER PROVIDE THE APPELLANT WITH INEFFECTIVE ASSISTANCE OF LEGAL COUNSEL AND THEREBY PERPETUATE THE PREJUDICE CAUSED BY TRIAL COUNSELS (sic) CONFLICT OF INTERESTS FOR ANY ONE, OR ALL OF THE FOLLOWING ACTS OR OMISSIONS?

(a) For failing to ensure and secure the in (sic) person Evidentiary Hearing Testimony of appellant's trial counsel when the sworn affidavit offered by trial counsel in dispute of a divergence of interests contained in a swearing to a chronological impossibility that provided the (PCRA) Court with insufficient testimony for adequate review?

Appellant's Brief at 3.

¶ 12 The Commonwealth has devoted most of its appellate brief filed in this matter to arguing that Appellant's amended PCRA petition is untimely. We must consequently discuss this contention before addressing the substantive merits of the issues Appellant has raised, since issues concerning the timeliness requirements of the PCRA implicate our Court's jurisdiction. *Commonwealth v. Pursell,* 561 Pa. 214, 219, 749 A.2d 911, 913 (2000). It is, of course, well settled that the courts of this Commonwealth lack jurisdiction to grant PCRA relief when a PCRA Petition is filed in an untimely manner. *Commonwealth v. Dehart,* 730 A.2d 991, 994 (Pa.Super.1999);

*Commonwealth v. Alcorn,* 703 A.2d 1054, 1057 (Pa.Super.1997), *appeal denied,* 555 Pa. 711, 724 A.2d 348 (1998).

¶ 13 The Legislature modified the PCRA's timing requirements in 1995, and the amendments took effect on January 16, 1996. *See Commonwealth v. Crider,* 735 A.2d 730, 732 (Pa.Super.1999) (discussing the implementation and mandate of the 1995 modifications to section 9545 of the PCRA). Pursuant to Section 9545(b) of the PCRA, any petition must be filed within one year of the date the judgment becomes final, except under three very limited circumstances:

(b) Time for filing petition.—

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

(3) For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.

42 Pa.C.S.A. § 9545(b).

¶ 14 Appellant's judgment of sentence became final on July 8, 1997, ninety (90) days after his petition for allowance of appeal was denied by our Supreme Court. *See Commonwealth v. Owens,* 718 A.2d 330, 331 (Pa.Super.1998) (under the PCRA, petitioner's judgment of sentence deemed final ninety (90) days after the Pennsylvania Supreme Court rejected his petition for allowance of appeal since petitioner had ninety additional (90) days to seek further review with the United States Supreme Court); *Commonwealth v. Lark,* 560 Pa. 487, 492, 746 A.2d 585, 587 (2000) (since appellant failed to pursue writ of certiorari his direct review rights expired at the end of the 90 day period allowed for filing of petition for writ of certiorari) Appellant's initial *pro se* PCRA petition, which was filed on December 1, 1997, was therefore clearly timely since it was filed well within one year of the date that his judgment of sentence had become final.

¶ 15 Nevertheless, the Commonwealth argues that Appellant's amended PCRA petition, which was filed on May 25, 1999, was untimely. The Commonwealth reasons that because Appellant's claim of his trial counsel's conflict of interest was not raised in his initial PCRA Petition, but rather was first raised in his amended PCRA petition, then it cannot be considered since it was not raised within one year of his judgment of sentence becoming final. We expressly reject this contention.

■■■ ¶ 16 Here Appellant filed his first PCRA Petition *pro se,* as many PCRA petitioners do. It is abundantly

clear that a first-time *pro se* PCRA petitioner is entitled to the benefit of the assistance of counsel to help identify and properly present potentially meritorious issues for the trial court's consideration. *See* Pa.R.Crim.P. 904(a) ("[W]hen an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, the judge shall appoint counsel to represent the defendant on the defendant's first petition for post-conviction collateral relief.")[6] and *Commonwealth v. Peterson*, 453 Pa.Super. 271, 683 A.2d 908 (1996) ("[This rule] allows an indigent defendant the opportunity to secure the appointment of counsel to aid him in the completion of his first petition seeking post-conviction collateral relief, regardless of the merits of his claim.") Once counsel has been appointed for an indigent petitioner, the rules of criminal procedure further contemplate that after reviewing the certified record appointed counsel may, in the exercise of his or her professional judgment, elect to raise additional issues beyond those which the petitioner raised in the initial *pro se* filing. Thus, Pennsylvania Rule of Criminal Procedure 905[7] expressly allows a trial court substantial latitude to permit the amendment of the petition at any time after the petition's initial filing. Rule 905 specifically provides as follows:

RULE 905. AMENDMENT AND WITHDRAWAL OF PETITION FOR POST-CONVICTION COLLATERAL RELIEF

*(a) The judge may grant leave to amend or withdraw a petition for post-conviction collateral relief at any time. Amendment shall be freely allowed to achieve substantial justice.*

*(b) When a petition for post-conviction collateral relief is defective as originally filed, the judge shall order amendment of the petition, indicate the nature of the defects, and specify the time within which an amended petition shall be filed. If the order directing amendment is not complied with, the petition may be dismissed without a hearing.*

*(c)* Upon the entry of an order directing an amendment, the clerk of courts shall serve a copy of the order on the defendant, the defendant's attorney, and the attorney for the Commonwealth.

*(d) All amended petitions shall be in writing, shall comply substantially with Rule 1502, and shall be filed and served within the time specified by the judge in ordering the amendment.*

Pa.R.Crim.P. 905 (emphasis supplied).

¶ 17 In the case *sub judice*, as previously discussed, Appellant clearly met the one-year deadline for the filing of his initial *pro se* PCRA Petition. Once the initial PCRA petition was filed, the Trial Court, pursuant to the authority granted to it by Pa.R.Crim.P. 905(a), specifically ordered Appellant's second appointed counsel. Attorney Coury, to file an amended PCRA by May 26, 1999. Attorney Coury complied with the Trial Court and filed the amended petition by that date. The amended PCRA petition, which Attorney Coury filed on Appellant's behalf, must therefore be regarded as an extension of the litigation process involving Appellant's initial *pro se* petition. It can not be considered a second or subsequent PCRA petition for the purposes of Section 9545(b) of the PCRA, because the Trial Court did not at any time prior to the filing of the amended petition rule on the

---

**6.** Present Rule of Criminal Procedure 904, adopted April 1, 2001, was formerly numbered Pa.R.Crim.P. 1504.

**7.** Present Rule of Criminal Procedure 905 adopted April 1, 2001, was formerly numbered Pa.R.Crim.P. 1505.

merits of the claims contained in the initial petition. Indeed, the Trial Court purposefully held its final decision in abeyance until the initial PCRA filing had been amended, as was its prerogative under Rule 905. Thus, since the amended petition was filed pursuant to the order of the Trial Court within the time period set by the Trial Court, it was timely filed in accordance with Pa.R.Crim.P. 905(d). We therefore will proceed to address the merits of the claims contained therein.

¶ 18 An appellate court's review of an order denying post conviction relief is limited to examining whether the evidence of record supports the determination of the PCRA court and whether the ruling is free from legal error. *Commonwealth v. Carpenter*, 555 Pa. 434, 445, 725 A.2d 154, 159–160 (1999). We will not disturb findings of the PCRA court that are supported by the certified record. *Commonwealth v. Hanyon*, 772 A.2d 1033, 1034–1035 (Pa.Super.2001) (citing *Commonwealth v. Yager*, 454 Pa.Super. 428, 685 A.2d 1000, 1003 (1996) (*en banc*), *appeal denied*, 549 Pa. 716, 701 A.2d 577 (1997)).

¶ 19 As Appellant's first and third issues are interrelated we will discuss them together. As detailed in our earlier discussion, at the time of Appellant's trial, his court appointed counsel, Attorney Farrell, unbeknownst to Appellant, was employed by the same firm that was representing the victim of the robbery, Gerrity's. Appellant contends that trial counsel's employment with the firm represented an actual conflict of interest and that the Trial Court abused its discretion in failing to award him a new trial on this basis. Appellant additionally contends that his appointed PCRA counsel, Attorney Coury, was ineffective for submitting affidavits from Attorney Farrell and Attorney Hailstone at the evidentiary hearing which was

held in this matter rather than securing their in-person testimony. Appellant maintains that the affidavits which were submitted were insufficient to support the Trial Court's conclusion that Attorney Farrell did not have an actual conflict of interest. After careful review of the affidavits in question, we are compelled to agree with Appellant's latter contention and therefore remand for the development of a more complete evidentiary record on this question.

¶ 20 At the outset, we note that trial counsel is presumed to have been effective and that the burden is on the appellant to prove otherwise. *Commonwealth v. Hall*, 549 Pa. 269, 290, 701 A.2d 190, 200 (1997), *cert. denied*, 523 U.S. 1082, 118 S.Ct. 1534, 140 L.Ed.2d 684 (1998). To establish counsel's ineffectiveness, a PCRA petitioner must prove that 1) his underlying claim has arguable merit, 2) the course chosen by counsel could have had no reasonable basis designed to serve the defendant's interests, and 3) the defendant was prejudiced by counsel's act or omission. *Commonwealth v. Kimball*, 555 Pa. 299, 312–313, 724 A.2d 326, 333 (1999); *Commonwealth v. Prisk*, 744 A.2d 294, 296 (Pa.Super.1999).

¶ 21 When a claim of ineffective assistance of counsel is based on an alleged conflict of interest, prejudice will be presumed if counsel is shown to have had an actual conflict of interest. *Commonwealth v. Munson*, 419 Pa.Super. 238, 615 A.2d 343, 346 (1992). If an appellant can demonstrate the existence of an actual conflict of interest which adversely affected his counsel's performance, then he is entitled to a new trial. *In Interest of Saladin*, 359 Pa.Super. 326, 518 A.2d 1258, 1261 (1986). To make such a showing an appellant must demonstrate that counsel *"actively represented* conflicting interests and that an actual conflict of interest adversely affect-

ed his lawyer's performance." *Commonwealth v. Buehl,* 510 Pa. 363, 379, 508 A.2d 1167, 1175 (1986) (emphasis supplied) (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 348, 350, 100 S.Ct. 1708, 1718–1719, 64 L.Ed.2d 333 (1980)). An actual conflict of interest is "evidenced whenever during the course of representation, the interests of appellant—and the interests of another client towards whom counsel bears obligations—diverge with respect to a material factual or legal issue or to a course of action." *Saladin,* 518 A.2d at 1261.

¶ 22 The Pennsylvania Rules of Professional Conduct further provide, in relevant parts:

### Rule 1.7. Conflict of Interest: General Rule

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after full disclosure and consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Pa.R.P.C. 1.7.

### Rule 1.10. Imputed Disqualification: General Rule

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.

* * * * *

Pa.R.P.C. 1.10.

■ ¶ 23 The Trial Court correctly recognized that the fact that Attorney Farrell's firm represented both the victim and the Appellant during trial and on direct appeal posed a potential conflict of interest. Trial Court Opinion, filed 5/9/2000, at 3. However, the Trial Court went on to determine that there was no prejudice to Appellant since there was no active representation of Gerrity's by Attorney Farrell, which would "give rise to a conflict of interest by her thereby creating a divergence of interest." *Id.* at 4. We note, though, that the Trial Court made this determination solely on the basis of the written affidavits submitted by Attorney Farrell and Attorney Hailstone. At the PCRA evidentiary hearing held in this matter, Attorney Farrell was not called to testify and therefore was not subject to questioning or cross examination on this issue. Appellant alleges that the decision not to call Attorney Farrell as a witness was made against his wishes and without appointed PCRA counsel having consulted Appellant.

¶ 24 As Appellant points out, Attorney Farrell's written affidavit alleges only that she never provided any legal services or advice to Gerrity's Market, either before or after November 1, 1999, and that, on and *after* November 1, 1999, she was unaware that her law firm represented Gerrity's. As such, we agree that it insufficiently addresses the issue of whether before or during the time period of her representa-

tion of Appellant, April of 1995 (when she first represented Appellant at the preliminary hearing stage) to April of 1997 (when Appellant's petition for allowance of appeal was denied by the Supreme Court), she actively represented Gerrity's or was aware that her law firm represented Gerrity's. The discrepancy in dates in the affidavit may indeed be the result of a simple typographic error, as the Commonwealth suggests. However, since Appellant's claim implicates his fundamental right to adequate representation of counsel secured by the Sixth Amendment to the U.S. Constitution and Article I, § 9 of the Pennsylvania Constitution, in order to properly resolve this discrepancy, and thereby insure a full and thorough evaluation of Appellant's claim, we are compelled to remand for a full evidentiary hearing on this issue. At that hearing the Trial Court shall receive all necessary and relevant testimony on this issue including but not limited to the following matters: whether Attorney Farrell was actively representing Gerrity's at any time during the period when she was also representing Appellant in the trial and appellate process and, if so, whether the nature of this representation adversely affected her representation of Appellant; whether Attorney Farrell knew of her law firm's relationship with Gerrity's during the time she was representing Appellant; and whether the law firm which represented Gerrity's and employed Attorney Farrell was, at the time of Attorney Farrell's representation of Appellant, representing Gerrity's in any civil litigation arising out of or connected to the incident for which Appellant was being prosecuted. At the conclusion of the hearing, the Court will make specific findings of fact and issue an appropriate order from

which the aggrieved party shall have the right to appeal.[8]

■ ¶ 25 We now turn to the matters contained in Appellant's second issue and six attendant subissues. We first note that our Court previously considered, in Appellant's prior direct appeal, the matters now raised by Appellant in issues II(b) and II(c). In Appellant's issue II(b) he alleges that trial counsel was ineffective for failing to file a pre-trial omnibus motion to suppress a videotape of the crime scene showing the path the Commonwealth asserted that Appellant traveled after the commission of the crime. Although this tape was initially played for the jury, after it became clear during cross-examination that the police officer who made the tape had no direct knowledge of the route which Appellant took upon fleeing the store subsequent to the robbery, the Trial Court expressly instructed the jury to disregard the tape and not to assign any weight to it whatsoever.

¶ 26 In Appellant's prior direct appeal, he argued that even though the Trial Court gave this instruction the playing of the tape for the jury nevertheless prejudiced him. Our Court rejected this claim and held that the curative instruction given by the Trial Court to the jury to ignore the tape was adequate. *Padden, supra,* (Superior Court Slip Opinion at 9.) Additionally, our Court found that the Appellant was not prejudiced because the jury was fully aware that the oral testimony adduced at trial established that he had taken a different path. *Id.* Moreover, we noted that the Appellant was apprehended in the vicinity within a minute after his description was broadcast. Finally, we concluded that "at most the initial admission of the videotape was harmless error in

---

8. The Trial Court is to appoint counsel for Appellant for the purposes of this evidentiary hearing.

light of the overwhelming evidence of guilt and the curative instructions given by the trial court." *Id.* at 10.

¶ 27 With respect to issue II(c) Appellant alleges that trial counsel was ineffective for failing to challenge the admissibility of the currency found in Appellant's possession at the time of his arrest. However, the record belies this contention. Our review of our Court's prior disposition indicates that trial counsel did allege on appeal that the Trial Court had erred in not suppressing all of the evidence which the Commonwealth introduced at trial. Our Court, however, rejected this claim. *Id.* at 4–5.

■ ¶ 28 It is axiomatic that a PCRA petitioner cannot obtain review of previously litigated claims decided adversely to him simply by presenting those claims under the guise of ineffective assistance of counsel and presenting new theories of relief in support thereof. 42 Pa.C.S.A. § 9544(a)(2); *Commonwealth v. Williams,* 557 Pa. 207, 238, 732 A.2d 1167, 1183 (1999); *Commonwealth v. Morales,* 549 Pa. 400, 410, 701 A.2d 516, 521 (1997). "The purpose of the PCRA is not to provide a defendant with a means of relitigating the merits of issues long since decided on direct appeal." *Commonwealth v. Henry,* 550 Pa. 346, 365, 706 A.2d 313, 322 (1997), (quoting *Commonwealth v. Buehl,* 540 Pa. 493, 500, 658 A.2d 771, 775 (1995)). Thus, since our Court previously addressed the matters which Appellant now complains of in issues II(b) and (c), the Trial Court correctly denied Appellant relief on these claims. We will address the remainder of Appellant's claims *seriatim.*

■ ¶ 29 In issue II(a), Appellant asserts that trial counsel was ineffective for failing to visit the crime scene. However, as the Trial Court noted, Appellant has not specified how trial counsel's performance was hindered because she did not visit the crime scene. Appellant has offered no showing of any particular additional material facts helpful to his defense that his trial counsel would or could have obtained by visiting the crime scene. Thus, Appellant cannot demonstrate that he was prejudiced in any way by counsel's failure to visit the crime scene, and the Trial Court properly denied him relief on this basis. *See Commonwealth v. Blystone,* 555 Pa. 565, 579, 725 A.2d 1197, 1204 (1999) (where a petitioner fails to prove prejudice, a claim of ineffective assistance of counsel may be rejected upon that basis alone) (citing *Commonwealth v. Travaglia,* 541 Pa. 108, 118 661 A.2d 352, 356–357, cert. denied, 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996)).

¶ 30 In issue II(d) Appellant claims that trial counsel was ineffective for failing to request an examination of the jurors regarding their observation of him in the company of sheriff's deputies and also that trial counsel was ineffective for failing to assert on appeal that the trial court had erred in failing to grant a mistrial because of the jury's observation of him. We disagree.

■ ¶ 31 The day before the scheduled start of trial, Appellant was apparently observed by the jury in a hallway of the courthouse being accompanied by a uniformed member of the Lackawanna County Sheriff's Office. Trial counsel did not personally observe Appellant being escorted by sheriff's deputies; however, upon becoming aware of this incident, she brought the matter to the trial court's attention and asked for a mistrial. This request was denied by the Trial Judge prior to the start of trial. N.T. Trial, 11/1/95, at 6.

¶ 32 Immediately before the commencement of opening arguments, Appellant was apparently again observed in the company

of sheriff's deputies as he entered the courtroom. Trial counsel promptly renewed her request for a mistrial before testimony was taken. This request was also denied by the Trial Judge. *Id.* at 7. However, at trial counsel's urging, the Trial Court gave a cautionary admonition to the jury. The Court addressed the jury as follows:

> Members of the jury, I just want to instruct you the lawyers are just concerned about inferences, and one of which is that, of course, we are sitting in criminal court, and, consequently, you see sheriff's and sheriffs with uniforms on. This is part of the administration of the criminal justice system. It's just an administrative matter. The jury is to take absolutely no inference with regard to sheriffs being present. It has nothing to do with this case. It has no inference with regard to the plaintiff's or the defendant's liability in this matter. I charge the jury that they are to take no inference from it and it's strictly administrative policies that we must adhere to.

*Id.* at 8.

¶ 33 Although, Appellant now claims that he was observed by the jury "in handcuffs and shackles," in his opinion, Judge Cottone explicitly found that Appellant was "neither handcuffed nor shackled" at the time the juror's observed him. Trial Court Opinion, *supra* at 7. Our review of the trial transcript supports Judge Cottone's determination, since there was absolutely no mention during the discussion on Attorney Farrell's respective motions for a mistrial, at the time of trial, that Appellant was handcuffed and shackled whenever the jury saw him. N.T. Trial, *supra* at 5–8. Thus, the only question for our consideration is whether trial counsel should have requested that the Trial Court conduct a *voir dire* examination of the jury panel

whenever Appellant was merely observed by the jury panel in the presence of sheriff's deputies.

¶ 34 As our Court has previously noted: "A brief accidental sighting of a defendant in custodial trappings, without more, is not so inherently prejudicial as to significantly impair the presumption of innocence to which the defendant is entitled." *Commonwealth v. Neary,* 355 Pa.Super. 92, 512 A.2d 1226, 1230 (1986), *appeal denied,* 515 Pa. 576, 527 A.2d 537 (1987). In *Commonwealth v. Mayhugh,* 233 Pa.Super. 24, 336 A.2d 379 (1975) an incident occurred which was similar in nature to those which occurred in the case at bar. In that case, a juror had inadvertently seen a defendant walking down a hallway of the courtroom flanked by two deputy sheriffs one of who had a handhold on him. As a result, trial counsel requested a mistrial and a *voir dire* examination of the jurors, which the trial court denied. On appeal, our Court considered the specific issue of "whether the inadvertent observance by a juror of a defendant being brought to the courtroom restrained only by the physical proximity of two sheriff's deputies, one of whom is grasping the arm of the defendant, *per se requires the grant of a mistrial or a voir dire examination of the juror."* *Id.* at 381. Our Court held that it did not. *Id.* We noted that because the defendant had been observed "with a minimum of restraint and in the custody of two deputy sheriffs who remained in the courtroom throughout the trial ... the degree of prejudice, if any resulting from the brief incident was so minute that the trial judge could properly have determined that a *voir dire* only would have served to magnify a minor occurrence." *Id.* at 382–383.

¶ 35 Thus, in the case *sub judice,* merely because the Appellant was seen in the presence of uniformed sheriff's dep-

uties who were escorting him, the Trial Court was not required to automatically conduct a *voir dire* examination of the jurors upon request; hence, trial counsel was not ineffective merely for failing to ask that the Trial Court do so. Furthermore, the Trial Court acted promptly, at trial counsel's request, to cure any potential prejudice to Appellant which may have arisen from the jury's observation of him in the presence of the sheriff's deputies by giving the explicit instruction that it did.[9] In light of this positive and substantive action taken by the Trial Court to cure any possible prejudice to the Appellant, which was the direct result of trial counsel's entreaty, any further *voir dire* of the jury panel was unnecessary and, indeed, may have further highlighted for the jury these incidents and called undue attention to them. Trial counsel therefore had a reasonable basis for not requesting additional *voir dire*. Correspondingly, since Appellant's claim that his right to a fair trial was prejudiced by the jury's observation of him in the presence of sheriff's deputies lacks arguable merit, trial counsel cannot be deemed ineffective for failing to have raised it on appeal. Counsel can never be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Gaskins*, 692 A.2d 224, 228 (Pa.Super.1997).

¶ 36 With respect to issue II(e) Appellant claims that trial counsel was ineffective because she failed to object to his sentencing taking place eighty-three (83) days following his conviction rather than within the sixty (60) day period mandated by Pa.R.Crim.P. 1405(A)(1).[10][11] In rejecting this claim, the Trial Court noted its belief that "[t]he PCRA mandates that Appellant show that his counsel was ineffective, which ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Trial Court Opinion, *supra* at 9. The basis for the Trial Court's belief undoubtedly was the statutory language contained in 42 Pa.C.S.A. § 9543(a)(2)(ii). This section of the PCRA allows a petitioner redress if he or she shows: "Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place." In arriving at its ultimate decision, the Trial Court reasoned that, though a delay in sentencing implicates two constitutional rights, the right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution and the Fourteenth Amendment's guaranteed right to due process, neither of these two rights relate to the truth determining process. Thus, the Trial Court ruled that Appellant's claim was not cognizable under the PCRA.

¶ 37 However, in a very recent decision, *Commonwealth ex rel. Dadario v. Goldberg*, 565 Pa. 280, 773 A.2d 126 (2001) the Supreme Court of Pennsylvania had occasion to discuss and clearly delineate the scope of ineffective assistance of counsel claims which are reviewable in a PCRA

---

9. Although the Trial Court obviously misspoke in its instruction with its inadvertent reference to "plaintiff's and defendant's liability" the import of its instruction was abundantly plain, namely that the jury was not to give any consideration to the presence of the sheriff's deputies.

10. Appellant was convicted on November 1, 1995 and sentenced by the trial Court on

January 23, 1996. At that time Pa.R.Crim.P. 1405(A) provided that sentence shall be imposed within sixty (60) days of conviction.

11. As of April 1, 2001, former Rule of Criminal Procedure 1405 became Rule 704. Rule 704 provides that a trial judge shall sentence an individual within ninety (90) days of his conviction.

proceeding.[12] Building on the foundation of its prior jurisprudence in the cases of *Commonwealth v. Kimball,* 555 Pa. 299, 724 A.2d 326 (1999), *Commonwealth v. Chester,* 557 Pa. 358, 733 A.2d 1242 (1999) and *Commonwealth v. Lantzy,* 558 Pa. 214, 736 A.2d 564 (1999), the Court stressed that the proper interpretation of Section 9543(a)(2)(ii) of the PCRA permits *all* constitutionally cognizable claims of ineffective assistance of counsel to be raised in a PCRA proceeding. *Id.* at 284–287, 773 A.2d at 129–130. The Court made clear that the phrase "so undermined the truth-determining process" as used in Section 9543(a)(2)(ii) of the PCRA "merely represents a statutory adoption of the prejudice standard for Sixth Amendment standard for ineffectiveness claims as developed in *Strickland* [v. *Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).]" *Id.* at 286, 773 A.2d at 130. Thus, the Court held that:

> if a petitioner claims that he or she was denied the effective assistance of counsel in violation of the Sixth Amendment and Article I, Section 9 of the Pennsylvania Constitution, Section 9543(a)(2)(ii) of the PCRA allows the petitioner to seek relief.

*Id.*

¶ 38 The Court pointed out that this interpretation of Section 9543(a)(2)(ii) is in accordance with the legislature's intent to avoid bifurcated collateral review proceedings, in which some claims of ineffective assistance of counsel would be cognizable under the PCRA while others would have to be brought separately in habeas corpus proceedings. *Id.* at 286–288, 773 A.2d at 130–131. The Court noted that its interpretation of Section 9543(a)(2)(ii) avoids the undesirable possibility of bifurcated proceedings since all constitutionally cognizable claims of ineffective assistance of

counsel would be reviewed under the PCRA. *Id.* at 287–288, 773 A.2d at 131. Thus, contrary to the Trial Court's conclusion, Appellant's claim that his counsel was ineffective for failing to object to the fact that he was not sentenced within the required sixty (60) day period was cognizable under the PCRA.

■■■■ ¶ 39 If a violation of Pa. R.Crim.P. 1405 occurs, the remedy of discharge is the appropriate one. *Commonwealth v. Anders,* 555 Pa. 467, 471, 725 A.2d 170, 172 (1999). However, discharge is not automatic simply upon a showing of a violation of the sixty (60) day sentencing rule. *Id.* Rather, to determine whether discharge is appropriate, a trial court should inquire into the following factors:

> (1) the length of the delay falling outside of Rule 1405(A)'s 60–day–and–good–cause provisions, (2) the reason for the improper delay, (3) the defendant's timely or untimely assertion of his rights, and (4) any resulting prejudice to the interests protected by his speedy trial and due process rights. Prejudice should not be presumed by the mere fact of an untimely sentence. Our approach has always been to determine whether there has in fact been prejudice, rather than to presume that prejudice exists. The court should examine the totality of the circumstances, as no one factor is necessary, dispositive, or of sufficient importance to prove a violation.

*Id.* at 473, 725 A.2d at 173 (citations omitted). Since the record in this matter is silent as to the reason for the delay in sentencing Appellant, upon remand, the Trial Court shall inquire into these factors in order to determine whether discharge is the appropriate remedy under these cir-

---

**12.** The Trial Court did not have the benefit of this decision at the time it drafted its opinion.

cumstances. Accordingly, the Court shall receive all relevant evidence on this issue at the evidentiary hearing, which we have previously ordered to be conducted in this matter, as well as entertaining argument on this issue from the Commonwealth and appointed counsel.

¶ 40 Lastly, in issue II(f) Appellant maintains that trial counsel was ineffective for failing to raise the issue of his alleged hearing impairment at the time of trial in the petition for allowance of appeal of our Court's decision which she filed on Appellant's behalf. In his original direct appeal to our Court, Appellant had argued that the trial court abused its discretion by not granting his request for a continuance because he had alleged that he had a cold and could not hear the testimony of the witnesses. *Padden, supra* (Superior Court Slip Memorandum at 5). Our Court rejected this argument and Appellant's counsel did not raise this issue in her petition for allowance of appeal with the Supreme Court.

¶ 41 In the case of *Commonwealth v. Byrd,* 441 Pa.Super. 351, 657 A.2d 961, 962 (1995), our Court set forth the relevant standards for evaluating a claim of counsel's ineffectiveness premised on a failure to include in a petition for allowance of appeal to the Supreme Court all of the issues which an appellant wished to raise. In that case that case we noted:

> Appellant contends that defense counsel was ineffective for failing to petition for allowance of appeal to the Supreme Court on all of the substantive issues raised by Appellant in his appeal to the Superior Court. An appeal to our Supreme Court is not a matter of right, but of sound judicial discretion. Pa.R.A.P. 1114; *Commonwealth v. Tanner,* 410 Pa.Super. 398, 600 A.2d 201 (1991), *appeal denied,* 530 Pa. 654, 608 A.2d 29 (1992). Review by the Supreme Court

is "purely discretionary and will be granted only where there exist both special and important reasons. Pa.R.A.P. 1114. It would be illogical to conclude that a miscarriage of justice occurred by counsel's failure to seek Supreme Court review unless it is established that the issue was such that review would have been granted by the Supreme Court." *Commonwealth v. Gilbert,* 407 Pa.Super. 491, 595 A.2d 1254 (1991), *appeal denied,* 529 Pa. 640, 600 A.2d 1258 (1991).

*Id.* at 962. Our Court went on to hold that Byrd was not entitled to relief on his ineffectiveness claim since he "failed to set forth any facts or arguments to establish that the issues which he would have raised possessed merit and that the Supreme Court would have exercised its discretion and reviewed Appellants issues [.]" *Id.* at 962–963.

██ ¶ 42 In Appellant's previous direct appeal, our Court agreed with the Trial Court's credibility determination that the Appellant's contention that he could not hear due to his cold was merely a pretext to delay trial. *Padden, supra* (Superior Court Slip Memorandum at 6). We also noted that Appellant was observed at the time of trial communicating with his trial counsel and therefore was aware of what was transpiring. *Id.* Appellant has not offered the PCRA Court or our Court any new or additional evidence which would indicate that our Court was incorrect in its analysis or conclusion. Additionally, Appellant has not directed our attention to any governing caselaw which would establish that our Court's original decision was in any way legally incorrect, nor has our research disclosed any.

¶ 43 Appellant cites in his brief the case of *Commonwealth v. Wallace,* 433 Pa.Super. 518, 641 A.2d 321, 325 (1994) as support for his position; however, it does not compel a different conclusion. In that

case, the appellant alleged that at the time of trial he was totally deaf in one ear and had only a limited ability to read lips. Despite the fact that defense witnesses testified to appellant's lack of ability to hear, neither defense counsel nor appellant brought to the trial court's attention the fact that appellant was not able to follow the proceedings because of his hearing impairment.

¶ 44 On appeal to our Court the appellant challenged trial counsel's effectiveness for failing to secure the services of an interpreter at trial. Our Court ruled that appellant had established an arguable claim of trial counsel's ineffectiveness for failing to request that the trial court appoint an interpreter and remanded for an evidentiary hearing. Importantly, though, our Court made no conclusions as to whether Appellant was in fact hearing impaired. We noted that the appellant still retained the burden of proof to establish that his hearing was "so impaired at the time of trial that he had been denied the right to a fair trial because of the lack of an interpreter." *Id.* at 329.

¶ 45 By contrast, in the case at bar, trial counsel promptly raised to the Trial Court prior to trial the issue of her client's alleged inability to hear. She specifically requested that the Trial Court continue the trial and offered to have Appellant examined by a doctor of the Commonwealth's choosing. N.T. Trial, *supra* at 3–4. The Trial Court denied both requests based on his observations of the Appellant. *Id.* at 5. Thus, trial counsel in the instant matter, unlike counsel in *Wallace,* acted diligently and promptly to bring the issue of her client's alleged hearing impairment to the Trial Judge for his consideration. He thereby made a first hand determination of the issue based on the evidence which was before him. Although his ruling was adverse to Appellant's contention,

this is not the fault of trial counsel. She took all reasonable steps to protect her client's interest under the circumstances. In sum, because Appellant cannot establish that the Supreme Court would have been likely to exercise its discretion and grant review of our Court's decision, had this issue been presented in his petition for allowance for appeal, we thus reject this particular claim of trial counsel's alleged ineffectiveness.

¶ 46 In conclusion, we affirm in part the order of the Trial Court denying Appellant relief under the PCRA and reverse in part and remand for an evidentiary hearing in accordance with this OPINION. Jurisdiction is relinquished.