**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Brandon William KEPNER, Appellee.**

Superior Court of Pennsylvania.

Submitted Aug. 15, 2011.

Filed Nov. 30, 2011.

---

Gregory A. Jackson, Assistant District Attorney, Huntingdon, for Commonwealth, appellant.

Ferderick R. Gutshall, Huntingdon, for appellee.

BEFORE: BENDER, SHOGAN, and STRASSBURGER*, JJ.

---

* Retired Senior Judge assigned to the Superior Court.

OPINION BY STRASSBURGER, J.:

The Commonwealth of Pennsylvania (Commonwealth) appeals from the judgment of sentence imposed following the *nolo contendere* plea of Brandon William Kepner (Kepner) to burglary and criminal trespass. Upon review, we affirm.

The trial judge told Kepner at sentencing that this case is "one of the most fantastic stories I've ever read." N.T., 1/27/2011, at 3. With that in mind, we provide a summary of the facts.

On March 28, 2010, Kepner was traveling from Penn State to Chambersburg, PA. His GPS unit eventually led him into a swamp, where Kepner's car became stuck. Kepner spent the evening trying to get the car out of the swamp, and eventually gave up and stayed the night in his car. The next morning, Kepner walked a short distance through the woods where he stumbled upon a camp.

After arriving at the camp, Kepner climbed a ladder to the roof where he broke a dormer window to get into the cabin. Kepner also disabled the alarm so that police would not respond. Kepner showered, ate, and drank champagne[1] found at the camp; then, he dressed himself in hunting clothes before heading out to the garage/shed of the camp. Kepner kicked in the door to the shed and took shovels, ropes, and ratchet straps. Kepner then went back to the main cabin and found a key ring with keys for several all-terrain vehicles (ATV) and a golf cart. Kepner drove one ATV over an embankment into several pine trees and left it there. Kepner tried to start a second ATV, but when it would not start, he pushed it down an embankment. Kepner took the ATV quad and drove it a short distance before it would not start again

---

1. There was no porridge in this adult version of "Goldilocks."

and left it where it had stopped. Kepner then wired what was later determined to be a stolen stereo system into the golf cart and used the golf cart to try to pull his car out of the swamp. After breaking several ropes, Kepner returned to the camp and spent the night. The next morning, Kepner used the golf cart to travel around the property and spent another night at the camp. On March 31, 2010, Kepner rammed the camp gate with the golf cart to exit the premises, and continued on to travel to the Whipple Dam store. Kepner purchased gas to put in his car, and on his way back to the camp, Kepner flagged down a motorist for help.

Kepner and the motorist tried unsuccessfully to get Kepner's car out of the swamp. Kepner and the motorist went back to the camp, which Kepner said belonged to his uncle. The motorist stayed at the camp while Kepner left to try to get his car unstuck again.

On the evening of March 31, 2010, Pennsylvania State Trooper Bush and the owner of the camp, Kevin Thomas, arrived at the camp to find the motorist there—he was detained and questioned. When Trooper Bush entered the cabin, he saw a glass bowl containing a small amount of marijuana [2] and a prescription pill bottle with Kepner's name on it. Kepner was found shortly thereafter walking in the swamp where the car was stuck. Kepner had driven the golf cart into a large creek where it also had become stuck. Furthermore, the car in the swamp had been reported as stolen.

---

2. Still no porridge.

3. Specifically, Kepner was charged with the following: three counts of burglary (18 Pa. C.S. § 3502(a)); three counts of criminal trespass (18 Pa.C.S. § 3503(a)(1)(ii)); one count of criminal mischief (18 Pa.C.S. § 3304(a)(5)); four counts of theft by unlawful taking (18 Pa.C.S. § 3921(a)); four counts of receiving

Kepner was transported by the Pennsylvania State Police to barracks in Huntingdon and placed in the county jail on a probation detainer from Franklin County. On April 4, 2010, Appellant was charged with burglary and a number of related offenses for the incidents that occurred at the camp between March 29, 2010 and March 31, 2011.[3] On October 28, 2010, Kepner entered a plea of *nolo contendere* to Count 1 (burglary) and Count 5 (criminal trespass).

On January 27, 2011, the trial court held a sentencing hearing. The following exchange occurred:

> The Court: The entry into that cabin is criminal trespass and that's a felony of the second degree and so you're not saving much here, so I'll tell you right now my intention is to sentence you on Count 5 of the Information which is criminal trespass as opposed to the Count 1 burglary.
>
> [Mr. Zanic (ADA)]: Can we approach?
>
> The Court: Sure.
>
> (Sidebar discussion was held off the record.)
>
> The Court: I am going to sentence in accord to what I think is justice. One is the lesser included offense of the other. Do you disagree?
>
> [ADA]: Right. So you would have to sentence on the top count.
>
> The Court: So I am sentencing on the lesser included.

stolen property (18 Pa.C.S. § 3925(a)); four counts of unauthorized use of a motor vehicle (18 Pa.C.S. § 3925(a)); one count of possession of a small amount of marijuana (35 P.S. § 780–113(a)(31)(i)); and one count of possession of drug paraphernalia (35 P.S. § 780–113(a)(32)).

[ADA]: He was convicted on the top count, not the lesser included.

The Court: Here's my sentence on Count 5. . . .

N.T., 1/27/2011, at 4.

Furthermore, the trial judge believed Kepner was very remorseful about his actions. N.T., 1/27/2011, at 3. The trial court took into account the statements made in the pre-sentence investigation report[4] as well as the letter Kepner wrote in the camp log book. Trial Court Opinion, 4/5/2011, at 3. The letter reads:

> Got stuck in the mudd (sic). Couldn't dig the car out so I spent the night. Will dig out car in the morning when the sun comes up. Glad I came acrosed (sic) this cabin or I don't know what I would have done. I had to break a window to get in but please understand I have been stuck in the mountain for 4 days now with no food or water cause I can't get the car out of the fucking mudd (sic) and it was frustrating me and I was starving and thirsty and I lost about 40 lbs in the last 4 days and I needed a shower and some food and my cell phone died so I can't call nobody but with the shovels in the garage I can dig out tomorrow so I should be OK just send me a bill for the window and I will pay it. Thank you so much for providing me with food and shelter. God brought me to this cabin so I could survive and I thank him.
>
> My name is Brandon Kepner. My address:
> 161 N. Forth St.

Chambersburg, PA 17201

> Please send me a bill for the window and I will gladly pay for it. This cabin was a lifesaver for me and I don't think I would have made it one more night but I'm OK now and I will pay for the window and the bottle of champagn (sic) I drank just send me a bill and a (sic) address to send the money. Thank you.
>
> /s/ Brandon Kepner
>
> P.S. I kicked in the door. Waving the four 4 big and broke the wood on the garage floor, it won't be a problem, I got money to solve them, I'll pay for it times four. LOL I just thought that little ryme (sic) up right now but yea the garage door was kicked in too because I needed gas. (After trying to get unstuck for 3 days I ran out of fucking gas too . . .) But like I said send me a bill for everything I'm sure it will be around 2–300 dollars and I will gladly pay for everything this cabin saved my life tonight and you got cable. I'm going to spend the night and dig out in the morning and hope to hear from you so I can send you the money I owe you. Sorry for the damage but it was necessary for my survival and I thank you again. Brandon Kepner. Very grateful.[5]

The trial court proceeded to sentence Kepner on Count 5 (criminal trespass) only. He was sentenced to pay a fine of $500, restitution of $3,740.81, and imprisonment for nine to 23 months, plus three years of consecutive probation. On February 15, 2011, the Commonwealth filed a

---

4. The pre-sentence investigation report stated that on March 10, 2010, less than three weeks prior to these events, a good friend of Kepner's died unexpectedly. Kepner said that after the funeral he stopped eating and lost about 20 pounds. He went to a doctor to get medication to help him sleep, and he was diagnosed with temporomandibular joint disorder (TMJ) and was prescribed sleeping pills and Percocet. After that, he claimed he started to develop erratic behavior.

5. We note that this was a handwritten letter that took up three-and-a-half pages in the book. The handwriting became progressively larger and more illegible as the letter went on.

notice of appeal. Both the Commonwealth and trial court complied with Pa.R.A.P. 1925.

On appeal, the Commonwealth raises one issue: "Did the trial court err in refusing to sentence [Kepner] on Count 1 of the information[?]". Commonwealth's Brief at 6.

■ Before reaching the merits of the appeal, we must first determine whether we properly have jurisdiction over this appeal and whether the Commonwealth may have waived the issue. We recognize that either the "defendant or the Commonwealth may appeal as of right the legality of the sentence." 42 Pa.C.S. § 9781(a). Furthermore, "[c]laims concerning the illegality of the sentence are not waivable." *Commonwealth v. Vasquez*, 560 Pa. 381, 744 A.2d 1280, 1284 (2000). "[L]egality of sentence issues occur generally either: (1) when a trial court's traditional authority to use discretion in the act of sentencing is somehow affected, . . . and/or (2) when the sentence imposed is patently inconsistent with the sentencing parameters set forth by the General Assembly." *Commonwealth v. Foster*, 17 A.3d 332, 342 (Pa.

2011) (internal citations and quotations omitted). Here, the Commonwealth contends that the trial court erred in fashioning its sentence pursuant to Pa.R.Crim.P. 701; thus, the Commonwealth is challenging the legality of the sentence, and we can proceed with review.

Specifically, the Commonwealth argues that the trial court erred by failing to sentence Kepner on both counts to which he pled *nolo contendere*[6] in contravention of Rule 701, which provides,

### Rule 701. Pleas of Guilty to Multiple Offenses

(A) Before the imposition of sentence, the defendant may plead guilty to other offenses that the defendant committed within the jurisdiction of the sentencing court.

(B) When such pleas are accepted, the court shall sentence the defendant for all the offenses.

Pa.R.Crim.P. 701. The trial court agrees with this analysis and asks this Court to remand for resentencing to provide the trial court with the opportunity to resentence on both counts. Trial Court Opinion, 4/5/2011, at 6. We disagree.[7]

---

6. We recognize that Kepner pled *nolo contendere*, rather than guilty, to the charges; however, "in terms of its effect upon a case, a plea of *nolo contendere* is treated the same as a guilty plea." *Commonwealth v. Lewis*, 791 A.2d 1227, 1230 (Pa.Super.2002) (internal citations and quotations omitted).

7. The Commonwealth, in its one paragraph argument section of its brief, raises only this issue. *See Commonwealth's Brief* at 9. The Dissenting Opinion raises several additional arguments on behalf of the Commonwealth, even though our appellate rules and case law "state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority . . . [and] [f]ailure to do so constitutes waiver of the claim." *Giant Food Stores, LLC v. THF Silver Spring Dev., L.P.*, 959 A.2d 438, 444 (Pa.Super.2008); *see also* Pa.R.A.P. 2119.

"This Court will not act as counsel and will not develop arguments on behalf of an appellant." *Irwin Union Nat. Bank & Trust Co. v. Famous*, 4 A.3d 1099, 1103 (Pa.Super.2010), *appeal denied*, 20 A.3d 1212 (Pa.2011).

Furthermore, even if the arguments that this was a manifest error or a mistake by the trial court were properly raised, we would respectfully disagree on the merits as well. "It is well-settled in Pennsylvania that a trial court has the inherent, common-law authority to correct 'clear clerical errors' in its orders." *Commonwealth v. Borrin*, 12 A.3d 466, 471 (Pa.Super.2011), *appeal granted*, 22 A.3d 1020 (Pa.2011). "[E]ven where the court would normally be divested of jurisdiction, a court may have the power to correct patent and obvious mistakes." *Commonwealth v. Klein*, 566 Pa. 396, 781 A.2d 1133, 1135 (2001).

However, even if the trial court, in retrospect, believes it made a mistake in sentenc-

■ The Comment to Rule 701 is instructive, and provides that "[t]he objective of this rule is to enable consolidation of all outstanding charges within the jurisdiction of the sentencing court for sentencing at one time." Thus, as an issue of first impression, we hold that the purpose of Rule 701 is to allow a defendant the opportunity to be sentenced one time on all charges within a particular jurisdiction. This rule was not designed, as the Commonwealth suggests, to compel a trial court to sentence a defendant on each count to which he or she pleads guilty. Therefore, we conclude the trial court did not create an illegal sentence in sentencing Kepner on only one of the two counts to which he pled *nolo contendere*.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judge SHOGAN files a Dissenting Opinion.

## DISSENTING OPINION BY SHOGAN, J.:

I respectfully dissent. In my view, the failure to sentence Appellee on Count 1 of the Information was a mistake with a remedy, and I would remand this matter to the trial court for resentencing.

The Majority leaves unanswered a question as to whether the trial court may still sentence Appellee on Count 1. Regardless of whether one considers this case to be a manifest error in the imposition of a sentence or a simple failure to sentence, the answer should be "yes."

If viewed as a manifest error, based on the trial court's mistaken presumption that Count 5 was a lesser-included offense of Count 1, the trial court should be permitted to correct its mistake. In *Common-*

*wealth v. Klein*, 566 Pa. 396, 781 A.2d 1133 (2001), our Supreme Court held that, notwithstanding a pending appeal, a trial court had jurisdiction to correct a manifest error in a sentence it imposed. Here, it was a manifest error in that the trial court failed to impose **any** sentence or even mention Appellee's conviction at Count 1, and jurisdiction is not at issue given our ability to vacate and remand. Thus, the reasons for allowing the trial court to correct its acknowledged mistake are even more compelling here.

If we view this as a failure to sentence, we note that Pennsylvania Rule of Criminal Procedure ("Pa.R.Crim.P.") 704(A) provides as follows:

**Procedure at Time of Sentencing**

(A) Time for Sentencing.

(1) Except as provided by Rule 702(B), sentence in a court case shall ordinarily be imposed within 90 days of conviction or the entry of a plea of guilty or *nolo contendere*.

(2) When the date for sentencing in a court case must be delayed, for good cause shown, beyond the time limits set forth in this rule, the judge shall include in the record the specific time period for the extension.

(3) In a summary case appeal, sentence shall be imposed immediately following a determination of guilt at a trial *de novo* in the court of common pleas.

Pa.R.Crim.P. 704(A).

Clearly, in the case at bar, there is a conviction without an accompanying sentence. It is also evident that the mechanical 90–day period for imposing sentence has now passed. However, I am guided

---

ing Appellant where it wrongly believed that Count 1 and Count 5 merged (*see* Trial Court Opinion, 4/5/2011, at 4), such a mistake is not

the type of clerical error or patent, obvious mistake that a trial court should have the inherent power to correct.

by cases applying the former version of this Rule, Pa.R.Crim.P. 1405.

If a violation of Pa.R.Crim.P. 1405 occurs, the remedy of discharge is the appropriate one. *Commonwealth v. Anders*, 555 Pa. 467, 471, 725 A.2d 170, 172 (1999). **However, discharge is not automatic** simply upon a showing of a violation of the sixty (60) day sentencing rule. *Id.* Rather, to determine whether discharge is appropriate, a trial court should inquire into the following factors:

> (1) the length of the delay falling outside of Rule 1405(A)'s 60-day-and-good-cause provisions, (2) the reason for the improper delay, (3) the defendant's timely or untimely assertion of his rights, and (4) any resulting prejudice to the interests protected by his speedy trial and due process rights. Prejudice should not be presumed by the mere fact of an untimely sentence. Our approach has always been to determine whether there has in fact been prejudice, rather than to presume that prejudice exists. The court should examine the totality of the circumstances, as no one factor is necessary, dispositive, or of sufficient importance to prove a violation.

*Id.* at 473, 725 A.2d at 173 (citations omitted).

*Commonwealth v. Padden*, 783 A.2d 299, 315 (Pa.Super.2001) (emphasis added).

Because the trial court's failure to sentence on Count 1 appears to be an oversight, the Majority's decision is perpetuating what the trial court admits was a mistake. Moreover, it would appear that good cause exists to extend the sentencing period and, thus, the trial court remains able to sentence Appellee on Count 1 under Pa.R.Crim.P. 704(A). As such, I would remand this matter to the trial court for immediate sentencing. Because this may affect the sentencing scheme as a whole, I would vacate the entire sentence and permit the trial court to resentence Appellee.

Finally, I point out that in footnote seven, the Majority claims waiver, and cites two civil cases that have no relevance as those cases do not deal with the societal protections and individual liberty interests that are the focus of criminal law. Footnote seven then ends with a paragraph that simply deems the error in sentencing "the type" that cannot be corrected. There is no legal authority or support for this finding, and as explained above, I cannot agree with the Majority's conclusion. Therefore, I respectfully dissent.