J-S33015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ELIJAH SCOTT | : | |
| | : | |
| Appellant | : | No. 1885 EDA 2021 |

Appeal from the PCRA Order Entered August 18, 2021,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0009111-2011.

BEFORE:  KUNSELMAN, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KUNSELMAN, J.:               **FILED DECEMBER 13, 2022**

Elijah Scott appeals from the order denying his first timely petition filed pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A. §§ 9541-46.  We affirm.

The PCRA court summarized the pertinent facts and procedural history as follows:

> On April 8, 2011, at about 1:00 a.m., in the area of 61st and Christian Streets in Philadelphia, Gary Francis Jr. ("Francis Jr.") was shot.  Following the shooting, Francis Jr. was taken to a nearby hospital where he was treated for numerous gunshot wounds.  He spent two months in the hospital recuperating and suffered permanent injuries.
>
> On the date Francis Jr. was shot, Gary Francis, Sr. ("Francis Sr.") was an officer in the Philadelphia Police Department.  When he heard his son had been shot, Francis Sr. went to the hospital. Francis Sr. was first able to speak with his son approximately one week later.

During a visit by Francis Sr. about two weeks after he was shot, Francis Jr. teared up and said that "Feek" shot him after which he gave a description of [Scott] to his father, which included a detailed description of the tattoos [Scott] had on his face as well as the motive for the shooting, namely, a dispute over a cellular telephone and a fight that resulted out of that dispute.

Following his discussion with his son, Francis Sr. called Philadelphia Police Detective Vincent Parker, a detective assisting in the investigation of the shooting, and asked him to come to the hospital. Francis Sr. thereafter gave police a statement recounting what his son had told him. He also indicated that, after Francis Jr. was released from the hospital, members of the Philadelphia District Attorney's Office assisted in relocating Francis Jr. outside of Philadelphia where, he still resides.

On April 19, 2011, Francis Jr. gave a statement to Detective Vincent Parker. During his statement to Detective Parker, Francis Jr. identified a photograph depicting [Scott], someone he knew for several years prior to the incident, and stated that it depicted the person he identified as "Feek." Francis Jr. also stated that he believed [Scott] shot him because he and [Scott] had fought about a week prior to the shooting inside the Hide Away Bar over a cell phone taken from a bartender named Keecha Davis.

I had just left the Hide Away Bar at Cobb and Catherine. While I was walking, an older black Cadillac pulled up at 61st and Christian Street. The guy Feek [Appellant] got out the front passenger door and asked me to go robbing with them. I couldn't see who else was in the car. I told Feek no. And that's when Feek pulled out a dark gun and said to me, Take this with me. Feek shot the gun at me. And I heard the first shot go by my right ear. I think it grazed my ear. I started twisting my body so he couldn't shoot me. But he shot me in the stomach and chest. He shot at me and then he got back in the black Cadillac and the car took off. It was on 61st Street. I dropped my keys and I called the police from my cell phone. The cops came and took me to the hospital.

[N.T., 6/29/16, at 63-64].

On August 9, 2011, at [Scott's] preliminary hearing, Francis Jr. testified that on the night of the shooting, he was walking on the street when a black Cadillac pulled up at which time [Scott] exited it and asked him if he wanted to join in a robbery. When

- 2 -

Francis Jr. declined, [Scott] put a hand on his shoulder and fired a handgun numerous times and that he tried but failed to take the gun from [Scott].

PCRA Court Opinion, 4/3/22, at 3-5 (citations omitted).

Scott's first trial ended in mistrial after the jury could not reach a verdict. The PCRA court summarized the pertinent testimony from this proceeding as follows:

On October 23, 2014, during [Scott's] first trial, Francis Jr. testified that he could not identify the person who shot him. He testified during the first trial that he was shot by someone who had just emerged from a car wielding what he thought was a dark .40 caliber semiautomatic handgun.

On cross-examination, Francis Jr. stated, *inter alia,* that he had used drugs the night he was shot, the signatures on the pages of his statement were not his, and that [Scott] was not the man who shot him. He added that [Scott] had no reason to hurt him and that he had no reason to hurt [Scott].

Francis Jr. also testified that he did not recall giving his April 19, 2011 statement. When Francis Jr. testified that he could not recall any of the details of the incident, including who shot him, the prosecutor impeached him with his prior preliminary hearing and trial testimony and with the contents of [a] prior statement he gave police on April 19, 2011. Although Francis Jr. testified during the first trial that he could not identify the shooter, he did tell that jury that he was shot by someone who had just emerged from a car wielding what he thought was a dark .40 caliber semiautomatic handgun, something which he denied being able to recall during his second trial. He also testified during the first trial that he and [Scott] would see each other at the Hide Away Bar[.]

PCRA Court Opinion, 4/3/22, at 5-6 (citations omitted).

The PCRA court then compared Scott's testimony at his second trial, as well as additional testimony presented by the Commonwealth as follows:

[D]uring the second trial [Scott] stated that he never patronized the Hide Away Bar. He further indicated that he told both of the prosecutors at both trials that [Scott] was not the person who shot him.

To further contradict Francis Jr.'s recantation testimony at the second trial, the Commonwealth presented evidence from Francis Sr. and Detective Parker. Francis Sr. testified that Francis Jr., who did not appear as required for [Scott's] trial the previous day, called him that night and told him that he was scared to testify and didn't want to testify because he did not want to relive the incident and wanted to get past it. Francis Sr. talked to his son in detail. Francis Sr. also identified the signatures on his son's statement and the photographic array as his son's signatures.

Detective Parker testified that he interviewed Francis Jr. and prepared a photographic array after he spoke to the victim's father, who relayed certain information to him including the name "Feek." Detective Parker testified that, on April 19, 2011, he went to the hospital where the victim was being treated for his wounds and took photos of his various wounds during the course of his interview. He further testified that before [Scott's] first trial the victim stated in his presence and that of the prosecutor assigned to the matter that [Scott] was not the person who shot him but that everything else in his statement was correct. In the detective's experience, recantations are not unusual.

On cross-examination, Detective Parker indicated that his investigation failed to uncover any evidence corroborating the victim's references to a black Cadillac or the caliber of the gun the victim described. He further testified that a search of two residences did not result in the seizure of a weapon and that the victim did not refer to [Scott] by his legal name.

PCRA Court Opinion, 4/3/22, at 6-7 (citations omitted).

Finally, the PCRA court summarized the rest of the defense case as follows:

As part of his defense, [Scott] presented alibi witnesses. [Scott] called his mother Ms. Stephanie Sharper as a witness. She testified that [Scott] had a bedroom in her residence, that he was at home during the evening when the shooting occurred watching

- 4 -

his daughter, and as far as she knew he did not leave the residence.

[Scott] also called Mr. Jamal Hairston, a friend of his, who testified that he went to [Scott's] residence on the night of the shooting to see [Scott]. According to Mr. Hairston, he went to [Scott's] residence to see if [Scott] wanted to go to Atlantic City with him and some "lady friends". However, Mr. Hairston did not speak to [Scott] because [Scott] was sleeping. Hairston stated that he personally observed [Scott] asleep in his bed.

*Id.* at 7.

At the conclusion of Scott's second trial, the jury convicted him of attempted murder and related charges. On September 15, 2016, the trial court sentenced Scott to an aggregate term of ten to twenty years of imprisonment. Scott appealed to this Court. On February 21, 2019, this Court agreed with Scott's counsel that the appeal was frivolous pursuant to ***Anders v. California***, 386 U.S. 738 (1967). We therefore permitted counsel to withdraw and affirmed Scott's judgment of sentence. ***Commonwealth v. Scott***, 209 A.3d 1077 (Pa. Super. 2019) (non-precedential decision). Scott did not seek further review.

On February 6, 2020, Scott filed a timely *pro se* PCRA petition, and the PCRA court appointed counsel. On or about February 24, 2020, Scott retained current PCRA counsel who was granted several extensions of time to file an amended petition. On July 3, 2020, Scott filed an amended PCRA petition in which he raised seven claims of trial counsel's ineffectiveness. On July 25, 2020, Scott filed a supplemental exhibit that consisted of an affidavit from Keecha Davis. On December 17, 2020, Scott filed a supplemental affidavit

from Ms. Davis. On March 22, 2021, the Commonwealth filed a motion to dismiss. On July 21, 2021, the PCRA court issued a Pa.R.A.P. 907 notice of its intent to dismiss Scott's PCRA petition without a hearing. Scott did not file a response. By order entered August 18, 2021, the PCRA court denied Scott's petition. This appeal followed. Both Scott and the PCRA court have complied with Pa.R.A.P. 1925.

Scott now raises the following seven issues on appeal:

I. Did the PCRA court err in finding, without benefit of a hearing, that [Scott] was not denied his [right] . . . to effective assistance of counsel . . . when trial counsel failed to interview and ensure the attendance of Keecha Davis, violating his [] rights under the Confrontation Clause and failed to investigate and object to the related prosecutorial misconduct?

II. Did the PCRA court err in finding, without benefit of a hearing, that [Scott] was not denied his [right] . . . to effective assistance of counsel in that trial counsel failed to object to the prosecution's opening and closing arguments concerning "threats, intimidation and/or fear" allegedly suffered by [Francis Jr.] which resulted in [Francis Jr.'s] recantation and on threats/intimidation to purported courtroom spectators during the trial proceedings when there was no such evidence of record?

III. Did the PCRA court err in finding, without benefit of a hearing, [Scott] was not denied his [right] . . . to effective assistance of trial [counsel] for opening the door to and/or failing to properly object to the Commonwealth's eliciting impermissible testimony about witnesses in this and other cases "going South"?

IV. Did the PCRA court err in finding, without benefit of a hearing, [Scott] was not denied his [right] . . . to effective assistance of counsel in that trial counsel opened the door to and/or failed to object to the

- 6 -

> prosecutor's questions and comments related to alibi witnesses['] failure to speak to police?
>
> V. Did the PCRA court err in finding, without benefit of a hearing, [Scott] was not denied his [right] . . . to effective assistance of counsel in that counsel stipulated to materially incorrect facts, failed to object to related prejudicial testimony and argued in closing about related facts not of record?
>
> VI. Did the PCRA court err in finding, without benefit of a hearing, that [Scott] was not denied his [right to effective assistance of counsel] when trial counsel ineffectively failed to object to the prosecution's use of Francis Jr.'s unsworn statements to his father and to Det. Parker while in the hospital to substantively establish [Scott's] guilt, and for failing to object to the [trial court's] related jury charge?
>
> VII. Did the PCRA court err in finding, without benefit of a hearing, that [Scott] was not denied his constitutional right to due process of law and a fair trial have been violated by the cumulative impact of trial counsel['s] ineffectiveness[?]

Scott's Brief at 4-5.

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

In each issue enumerated above, Scott asserts that the PCRA court erred in failing to hold an evidentiary hearing regarding some of his claims.

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no

genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

In each issue, Scott also challenges the effectiveness of trial counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A failure to satisfy any prong of the test for ineffectiveness will require

rejection of the claim. ***Commonwealth v. Martin***, 5 A.3d 177, 183 (Pa. 2010).

Here, the PCRA court has authored a thorough and well-reasoned opinion pursuant to Rule 1925(a). The Honorable Sierra Thomas Street has addressed each of Scott's ineffectiveness claims with proper citation to legal authorities and citation to the certified record. In addition, she has explained why an evidentiary hearing was not necessary before disposing of Scott's ineffectiveness claims.

We discern no legal errors in Judge Thomas Street's analysis, and we find her factual findings and credibility determinations fully supported by our review of the record. As such, we adopt Judge Thomas Street's 1925(a) opinion as our own in affirming the order denying Scott post-conviction relief. ***See*** PCRA Court's Opinion, 5/3/22, at 10-14 (explaining that absence of Ms. Davis's testimony did not deprive Scott of a fair trial, Scott's related claim of prosecutorial misconduct in relation to Ms. Davis's failure to appear also fails); at 14-17 (concluding that the prosecutor's statements in her opening and closing argument were based on facts in evidence); at 17-18 (explaining that the Commonwealth properly elicited testimony of witnesses "going south" with or without trial counsel "opening the door"; Scott fails to identify any rule of evidence that would preclude such testimony); at 18-19 (explaining that Commonwealth properly cross-examined alibi witness regarding why they did not go to police with or without trial counsel "opening the door"); at 19-20

(concluding trial counsel was not ineffective in stipulating to and referencing in his closing evidence of bullet fragments when such evidence was introduced as part of a Commonwealth's exhibit); at 20-21 (concluding on direct appeal this Court already concluded that the victim's statements to his father and Detective Parker were properly admitted as substantive evidence and for impeachment purposes); and 21-22 (explaining that, because each ineffectiveness claim was without merit, Scott's claim of cumulative error is meritless).[1]

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/2022

---

[1] The parties are directed to attach Judge Thomas Street's May 3, 2022, opinion to this memorandum in any future appeal.

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## TRIAL DIVISION- CRIMINAL SECTION-

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | CP-51-CR-0009111-2011 |
| v. | 1885 EDA 2021 |
| ELIJAH SCOTT | |

## OPINION

**THOMAS STREET, SIERRA, J.**

The Appellant, Elijah Scott ("Appellant") appeals the Court's Order denying his petition filed under the Post-Conviction Relief Act, 42 Pa.C.S.A. §§9541-9546 ("PCRA"). This Court submits the following Opinion pursuant to Pa.R.A.P. No. 1925 and recommends that Appellant's appeal be denied.

### I.    PROCEDURAL BACKGROUND

Appellant was originally tried by jury on October 27, 2014, and a Mistrial was declared on October 28, 2014. On July 1, 2016, at a subsequent re-trial, a jury convicted Appellant of attempted murder, aggravated assault, carrying a firearm without a license, carrying a firearm on a public street, and possessing an instrument of crime.[1] On September 15, 2016, the Court sentenced Appellant to an aggregate term of 10 to 20 years imprisonment. Following the denial of post-sentence motions, Appellant appealed. On February 21, 2019, the Superior Court affirmed Appellant's judgment of sentence.

---

[1] 18 Pa.C.S. §§ 901(a), 2702(a), 6101(a)(1), 6108 and 907, respectively.

*Commonwealth v. Scott*, 209 A.3d 1077(Pa. Super. 2019). Appellant did not seek *allocatur*.

In his direct appeal, Appellant raised the following claims: (a) trial counsel was ineffective in failing to move for judgment of acquittal, (b) the evidence was insufficient to sustain the jury's verdict, (c) the trial court committed reversible error by not *sua sponte* vacating the jury's guilty verdict, (d) a new trial is warranted because the prosecutor interfered with Scott's right to call Keecha Davis as a defense witness, (e) the trial court committed an abuse of discretion by denying a motion for mistrial and an objection after the prosecutor asked the complainant if he stated the previous day he was afraid to testify, and (f) the trial court committed an abuse of discretion by overruling objections to inadmissible hearsay. *Scott supra.* With the exception of Appellant's right to call Keecha Davis as a defense witness, the Superior Court denied Appellant's claims on the merits. *Id.* Regarding the defense's right to call Keecha Davis, the Superior Court found that issue was waived. *Id.*

On February 6, 2020, Appellant filed a *pro se* PCRA Petition. On July 3, 2020, current counsel filed an amended petition, and on July 25, 2020, filed a supplemental exhibit. On December 17, 2020, counsel filed a supplemental affidavit from Keecha Davis dated November 18, 2020. On March 22, 2021, the Commonwealth filed a Motion to Dismiss. This Court determined that the issues raised in the Amended PCRA were without merit. By Order of August 18, 2021, the Court formally dismissed the PCRA Petition. On September 16, 2021, Appellant timely filed a Notice of Appeal.

Appellant raises seven claims in his amended petition, alleging that: (i) trial counsel was ineffective for failing to ensure the attendance of Keecha Davis and failing to investigate and object to the related prosecutorial misconduct; (ii) trial counsel was ineffective for failing to object to the prosecution's opening and closing statements concerning

2

"threats, intimidation and/or fear" allegedly suffered by the victim which resulted in the victim's recantation and on threats/intimidation to purported courtroom spectators during the trial proceedings; (iii) trial counsel was ineffective for opening the door and/or failing to properly object to the Commonwealth eliciting impermissible testimony about witnesses going south in this case and other cases; (iv) trial counsel was ineffective for opening the door and/or failing to object to the prosecutor's questions and comments related to the alibi witnesses' failure to speak to police; (v) trial counsel was ineffective for stipulating to materially incorrect facts, failing to object to related prejudicial testimony, and arguing in closing about related facts not of record; (vi) trial counsel was ineffective for failing to object to the prosecution's use of Francis Jr.'s unsworn statements to his father and Detective Parker while in the hospital and for failing to object to the related jury charge; and (vii) cumulative error.

## II.    FACTS

On April 8, 2011, at about 1:00 a.m., in the area of 61st and Christian Streets in Philadelphia, Gary Francis Jr. ("Francis Jr.") was shot. (N.T. 6/29/16 pgs. 38 and 84.) Following the shooting, Francis Jr. was taken to a nearby hospital where he was treated for numerous gunshot wounds. (*Id.* pgs. 42-46.) He spent two months in the hospital recuperating and suffered permanent injuries. (*Id.* pgs. 89-91.)

On the date Francis Jr. was shot, Gary Francis, Sr. ("Francis Sr.") was an officer in the Philadelphia Police Department. (*Id.* pg. 254) When he heard his son had been shot, Francis Sr. went to the hospital. (*Id.* pg. 255.) Francis Sr. was first able to speak to his son approximately one week later (*Id.* pg. 256.).

During a visit by Francis Sr. about two weeks after he was shot, Francis Jr. teared up and said that "Feek" shot him after which he gave a description of Appellant to his father,

3

which included a detailed description of the tattoos Appellant had on his face as well as the motive for the shooting, namely, a dispute over a cellular telephone and a fight that resulted out of that dispute. (*Id*. pgs. 257-68.)

Following his discussion with his son, Francis Sr. called Philadelphia Police Detective Vincent Parker, a detective assisting in the investigation of the shooting, and asked him to come to the hospital. (*Id*. pg. 259) Francis Sr. thereafter gave police a statement recounting what his son had told him. (*Id*. pg. 262.) He also indicated that, after Francis Jr. was released from the hospital, members of the Philadelphia District Attorney's Office assisted in relocating Francis Jr. outside of Philadelphia where, he still resides. (*Id*. pgs. 271-73.)

On April 19, 2011, Francis Jr. gave a statement to Detective Vincent Parker. During his statement to Detective Parker, Francis Jr. identified a photograph depicting Appellant, someone he knew for several years prior to the incident, and stated that it depicted the person he identified as "Feek." (*Id*. pgs. 57-66, 70.) Francis Jr. also stated that he believed Appellant shot him because he and Appellant had fought about a week prior to the shooting inside the Hide Away Bar over a cell phone taken from a bartender named Keecha Davis. (*Id*. pgs. 72-73.) In that statement, Francis Jr. told police the following:

> I had just left the Hide Away Bar at Cobb and Catherine. While I was walking, an older black Cadillac pulled up at 61st and older black Cadillac pulled up at 61st and Christian Street. The guy Feek [Appellant] got out the front passenger door and asked me to go robbing with them. I couldn't see who else was in the car. I told Peek no. And that's when Peek pulled out a dark gun and said to me, Take this with me. Feek shot the gun at me. And I heard the first shot go by my right ear. I think it grazed my ear. I started twisting my body so he couldn't shoot me. But he shot me in the stomach and chest. He shot at me and then he got back in the black Cadillac and the car took off. It was on 61st Street. I dropped my keys and I called the police from my cell phone. The cops came and took me to the hospital.

> (N.T. 6/29/16, 63-64); (*see* Francis Jr.'s April 19, 2011 statement).

4

On August 9, 2011, at Appellant's preliminary hearing, Francis Jr. testified that on the night of the shooting, he was walking on the street when a black Cadillac pulled up at which time Appellant exited it and asked him if he wanted to join in a robbery. (*Id.* pg. 85.) When Francis Jr. declined, Appellant put a hand on his shoulder and fired a handgun numerous times and that he tried but failed to take the gun from Appellant. (*Id.* pg. 87.)

On October 23, 2014, during Appellant's first trial, Francis Jr. testified that he could not identify the person who shot him. He testified during the first trial that he was shot by someone who had just emerged from a car wielding what he thought was a dark .40 caliber semiautomatic handgun. (*see* Mistrial N.T. 10/23/14, 47-122).

On cross-examination, Francis Jr. stated, *inter alia*, that he had used drugs the night he was shot, the signatures on the pages of his statement were not his, and that Appellant was not the man who shot him. (*Id.* pgs. 160, 165, and 167.) He added that Appellant had no reason to hurt him and that he had no reason to hurt Appellant. (*Id.* pg. 179.)

Francis Jr. also testified that he did not recall giving his April 19, 2011 statement. (*Id.* pgs. 49-50 and 57.) When Francis Jr. testified that he could not recall any of the details of the incident, including who shot him, the prosecutor impeached him with his prior preliminary hearing and trial testimony and with the contents of prior statement he gave police on April 19, 2011. (*Id.* pgs. 53-77.) Although Francis Jr. testified during the first trial that he could not identify the shooter, he did tell that jury that he was shot by someone who had just emerged from a car wielding what he thought was a dark .40 caliber semiautomatic handgun, something which he denied being able to recall during his second trial. (*Id.* pgs. 38, 41, 75, and 141.) He also testified during the first trial that he and

5

Appellant would see each other at the Hide Away Bar however, during the second trial he stated that he never patronized the Hide Away Bar. (*Id.* pg. 82.) He further indicated that he told both of the prosecutors at both trials that Appellant was not the person who shot him. (*Id.* pgs. 119-23.)

To further contradict Francis Jr.'s recantation testimony at the second trial, the Commonwealth presented evidence from Francis Sr. and Detective Parker. (*Id.* pgs. 253-304 and 6/30/16 pgs. 14-131.) Francis Sr. testified that Francis Jr., who did not appear as required for Appellant's trial the previous day, called him that night and told him that he was scared to testify and didn't want to testify because he did not want to relive the incident and wanted to get past it. (N.T. 6/29/16 pg. 274.) Francis Sr. talked to his son in detail. (*Id.*) Francis Sr. also identified the signatures on his son's statement and the photographic array as his son's signatures. (*Id.* pgs. 275-76.)

Detective Parker testified that he interviewed Francis Jr. and prepared a photographic array after he spoke to the victim's father, who relayed certain information to him including the name "Feek." (N.T. 6/30/16 pgs. 21-24.) Detective Parker testified that, on April 19, 2011, he went to the hospital where the victim was being treated for his wounds and took photos of his various wounds during the course of his interview. (*Id.* pgs. 28-34.) He further testified that before Appellant's first trial the victim stated in his presence and that of the prosecutor assigned to the matter that Appellant was not the person who shot him but that everything else in his statement was correct. (*Id.* pg. 46.) In the detective's experience, recantations are not unusual. (*Id.* pgs. 47-54.)

On cross-examination, Detective Parker indicated that his investigation failed to uncover any evidence corroborating the victim's references to a black Cadillac or the caliber of the gun the victim described. (*Id.* pg. 68.) He further testified that a search of two

residences did not result in the seizure of a weapon and that the victim did not refer to Appellant by his legal name. (*Id.* pgs. 68-78, 95-96.)

As part of his defense, Appellant presented alibi witnesses. Appellant called his mother Ms. Stephanie Sharper as a witness. (N.T. 6/30/16 pgs. 203-71.) She testified that Appellant had a bedroom in her residence, that he was at home during the evening when the shooting occurred watching his daughter, and as far as she knew he did not leave the residence. (*Id.* pgs. 208, 210-17.)

Appellant also called Mr. Jamal Hairston, a friend of his, who testified that he went to Appellant's residence on the night of the shooting to see Appellant. (*Id.* pgs. 271-274.) According to Mr. Hairston, he went to Appellant's residence to see if Appellant wanted to go to Atlantic City with him and some "lady friends." (*Id.* pg. 274.) However, Mr. Hairston did not speak to Appellant because Appellant was sleeping. Hairston stated that he personally observed Appellant asleep in his bed. (*Id.* pg. 275.)

### III.    <u>ISSUES RAISED ON APPEAL</u>

The Appellant's Rule 1925(b) Statement states, verbatim, that:

1. The PCRA Court erred in finding, without benefit of a hearing, that Petitioner was not denied his rights under Article 1 §9 of the Constitution of the Commonwealth of Pennsylvania and the Sixth and Fourteenth Amendments to the Constitution of the United States of America to effective assistance of counsel and when trial counsel failed to interview and ensure the attendance of Keecha Davis, violating his Petitioner's rights under the Confrontation Clause and failed to investigate and object to the related prosecutorial misconduct.

2. The PCRA Court erred in finding, without benefit of a hearing, that Petitioner was not denied his rights under Article 1 §9 of the Constitution of the Commonwealth of Pennsylvania and the Sixth and Fourteenth Amendments to the Constitution of the United States of America to effective assistance of counsel in that trial counsel failed to object to the prosecution's opening and closing arguments concerning "threats, intimidation and/or fear" allegedly suffered by the victim which resulted in the victim's recantation and on threats/intimidation to

7

purported courtroom spectators during the trial proceedings when there was no such evidence of record.

3. The PCRA Court erred in finding, without benefit of a hearing, that Petitioner was not denied his rights under Article 1 §9 of the Constitution of the Commonwealth of Pennsylvania and the Sixth and Fourteenth Amendments to the Constitution of the United States of America to effective assistance of trial (sic.) for opening the door to and/or failing to properly object to the Commonwealth's eliciting impermissible testimony about witnesses in this and other cases "going South."

4. The PCRA Court erred in finding, without benefit of a hearing, that Petitioner was not denied his rights under Article 1 §9 of the Constitution of the Commonwealth of Pennsylvania and the Sixth and Fourteenth Amendments to the Constitution of the United States of America to effective assistance of counsel in that trial counsel opened the door to and/or failed to object to the prosecutor's questions and comments related to alibi witnesses (sic.) failure to speak to police.

5. The PCRA Court erred in finding, without benefit of a hearing, that Petitioner was not denied his rights under Article 1 §9 of the Constitution of the Commonwealth of Pennsylvania and the Sixth and Fourteenth Amendments to the Constitution of the United States of America to effective assistance of counsel in that trial counsel stipulated to materially incorrect facts, failed to object to related prejudicial testimony and argued in closing about related facts not of record.

6. The PCRA Court erred in finding, without benefit of a hearing, that Petitioner was not denied his rights under Article 1 §9 of the Constitution of the Commonwealth of Pennsylvania and the Sixth and Fourteenth Amendments to the Constitution of the United States of America when trial counsel ineffectively failed to object to the prosecution's use of Francis Jr.'s unsworn statements to his father and to Det. Parker while in the hospital to substantively establish Petitioner's guilt, and for failing to object to the Court's related jury charge.

7. The PCRA Court erred in finding, without benefit of a hearing, that Petitioner was not denied his constitutional right to due process of law and a fair trial have been violated by the cumulative impact of trial counsels' ineffectiveness in violation of the Sixth Amendment.

## IV. DISCUSSION

Appellant appeals from the PCRA court's dismissal of his petition for relief filed pursuant to the Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546. In reviewing the denial of PCRA relief, a reviewing court examines whether the PCRA court's determination "is supported by the record and free from legal error." *Commonwealth v. Rainey*, 928 A.2d 215, 223 (Pa. 2007). The PCRA court's findings will not be disturbed unless there is no

support for the findings in the certified record. **Commonwealth v. Lippert**, 85 A.3d 1095, 1100 (Pa. Super. 2014).

To be eligible for PCRA relief, an appellant must establish, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S.A. § 9543(a)(2), his claims have not been previously litigated or waived, and "the failure to litigate the issue prior to or during trial... or on direct appeal could not have been the result of any rational, strategic, or tactical decision by counsel." **Id.** § **9543(a)(3)-(4).** An issue is previously litigated if the "highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue." **42 Pa.C.S.A.** § **9544(a)(2).** Further, an issue is waived if appellant "could have raised it but failed to do so before trial, at trial,... on appeal or in a prior state postconviction proceeding." **Id.** § **9544(b).**

Moreover, there is a "presumption that counsel rendered effective assistance." **Commonwealth v. Dennis,** 609 Pa. 442, 450 (Pa. 2011). "To obtain relief on a claim of ineffective assistance of counsel, a petitioner must rebut that presumption and demonstrate that counsel's performance was deficient, and that such performance prejudiced him." **Id.** Appellant "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." **Commonwealth v. Turetsky,** 925 A.2d 876, 880 (Pa. Super. 2007)(citation omitted).

The burden is on the defendant to prove all three of the following prongs: "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." **Id.**

(citation omitted); *see also* **Commonwealth v. Daniels**, 963 A.2d 409, 419 (Pa. 2009) ("A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." (citation omitted)). Moreover, "the right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence." **Commonwealth v. Jordan**, 772 A.2d 1011, 1014 (Pa. Super. 2001).

Applying these standards to the present case, Appellant is not entitled to relief on any of his seven claims.

### A. Appellant's claim of trial counsel's ineffective for failing to ensure the attendance of Keecha Davis and failing to object to alleged prosecutorial misconduct is meritless.

Based upon Keecha Davis' most recent affidavit, her proffered testimony does not establish a reasonable probability that, but for her failure to testify, the outcome of the trial would have been different. *Turetsky supra*. Ms. Davis did not witness the shooting. (See Davis' April 20, 2011, statement to police; Mistrial testimony N.T. 10/23/14, 113-46; May 30, 2017 affidavit; July 17, 2020 affidavit, and November 18, 2020 affidavit.) However, Appellant argues that Ms. Davis' testimony was necessary to negate the Commonwealth's claim that a fight between Appellant and Francis Jr. over her cellular telephone was the Appellant's motive for the shooting. (See Amended Motion for Post Conviction Relief.) Moreover, Appellant claims that Ms. Davis' testimony could have been used to impeach Francis, Jr. regarding "his motive to lie and outside influences on his testimony." (*Id.*)

In order to prevail on an ineffectiveness claim for failure to call a witness, a Appellant must show (1) the witness existed; (2) the witness was available to testify; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify; and (5) the absence of the witness's testimony was so prejudicial as

to have denied the Appellant a fair trial. **Commonwealth v. Sneed**, 45 A.3d 1096, 1108-09 (Pa. 2012). Thus, an Appellant must show that the testimony would have been helpful to his defense. **Commonwealth v. Auker**, 681 A.2d 1305, 1319 (Pa. 1996). Here, Appellant cannot establish that "the absence of the witness's testimony was so prejudicial as to have denied the Appellant a fair trial." **Sneed.**

Here, the absence of the Ms. Davis' testimony was not so prejudicial as to have denied the Appellant a fair trial. In her April 20, 2011 statement, Ms. Davis stated she was working at the Cobb's Creek Inn on the night of Thursday, April 7, 2011. (See Ms. Davis' April 20, 2011 statement.) Ms. Davis told police that Appellant was not at the bar that night because of an incident that occurred on April 4, 2011. On April 4, 2011, Appellant took her phone off the bar. (*Id.*) Appellant returned to the bar and told Ms. Davis that he sold the phone to Francis Jr. (*Id.*) Then Ms. Davis and Appellant walked to meet Francis Jr. (*Id.*) When they met, Appellant and Francis Jr. "got into words and they were going back and fourth. (*Id.*) Ms. Davis "flagged down police" who stopped Appellant and Francis Jr." (*Id.*) Police told Ms. Davis that she would have to file a complaint so she walked back to the bar with Appellant and tried to get into a fight with him. (*Id.*) Appellant called the police on Ms. Davis, so she got into a cab and left. (*Id.*) Ms. Davis did not see and was not aware of any physical altercations between Appellant and Francis Jr. (*Id.*)

At Appellant's first trial, Ms. Davis testimony was consistent with her April 20, 2011, statement.

Appellant attached as an exhibit an Affidavit from Keecha Davis dated May 30, 2017, to his July 3, 2020 Amended Petition. (See Keecha Davis Affidavit dated May 30, 2017.) In that affidavit, Ms. Davis stated that the prosecutor did not text her to notify her to return to court because the trial was over. (*Id.*)

11

On July 25, 2020, Appellant filed another affidavit from Ms. Davis dated July 17, 2020. (See Keecha Davis Affidavit dated July 25, 2020.) In that affidavit, Ms. Davis states that no "fight or physical altercation happened between" Appellant and Francis Jr. (*Id.*) She also stated that, while at court in the witness room on June 29, 2016, Francis Jr. told her that he feels bad because Appellant is innocent, and no one believes him. (*Id.*) Francis Jr. also told her that his dad made him do this. (*Id.*) Ms. Davis further stated that, when she returned to court on June 30, 2016, the prosecutor told her that the trial was over and that she could leave. (*Id.*) She stated that, if notified, she would have come to court. (*Id.*)

On December 17, 2020, Appellant filed another supplemental affidavit of Ms. Davis dated November 18, 2020. (See Keecha Davis Affidavit dated July 25, 2020.) In that affidavit, Ms. Davis stated that she saw Francis Jr. in the bar the night he was shot. (*Id.*) Ms. Davis does not know what time he left. (*Id.*) Ms. Davis stated that she heard gunshots between 1:00 and 2:00 a.m. (*Id.*) However, she does not know what happened. (*Id.*)

In her July 25, 2020 statement, Ms. Davis further stated that she spoke to Detective Parker and told him about the incident with Appellant, Francis Jr., and her cellular telephone. (*Id.*) She also asserted that Francis Jr. was high on Xanax. (*Id.*) Moreover, she stated that she is not aware of Appellant or Francis Jr. ever fighting. (*Id.*) Furthermore, she stated that she told Det. Parker that she did not think Appellant shot Francis Jr. because Appellant is not a "tough guy." (*Id.*)

In that affidavit, Ms. Davis also stated that, during the trial while sitting outside on a bench, Francis Jr. told her that he was going to "make things right." (*Id.*) She thought Francis Jr. meant that Appellant was not the shooter. (*Id.*) The next day, when she was supposed to go to court, she received a telephone call from a female who told her that she was not needed. (*Id.*)

12

Ms. Davis' proffered testimony does not challenge the Commonwealth's contention regarding motive. In her statement to police, Ms. Davis said that the Appellant and Francis Jr. got into an argument a few days before the shooting over her cellular telephone that Appellant stole off the bar. (See Davis' April 20, 2011 statement.) In that statement she said the argument was not physical. (*Id.*) However, there was some type of altercation between Appellant and Francis Jr. over her cellular telephone that caused her to flag down police. (See Ms. Davis' April 20, 2011 statement.) Even if the altercation was not physical, the prosecution could still argue it was motive. Moreover, motive was not relevant to Appellant's alibi defense especially in light of the fact that, at trial, Francis Jr. did not identify him as the shooter.

Appellant also claims that Ms. Davis' testimony could have been used to impeach Francis, Jr. regarding "his motive to lie and outside influences on his testimony." (See Amended Motion for Post Conviction Relief.) However, Francis Jr. testified that he knows Appellant and that Appellant did not shoot him because Appellant would not do something like that. (N.T. 6/29/16 pgs. 123-24.) Francis Jr. further stated that he was not going to send an "innocent man to jail." (*Id.* pg. 124.) Moreover, Francis Jr.'s veracity was already at issue. Because Francis Jr. did not identify Appellant at trial, the Commonwealth relied upon Francis Jr.'s prior statements to identify Appellant. (*Id.* pgs. 57-78.) Francis Jr. testified that the signature on the statement was not his. (*Id.* pg. 160.) He also testified that the statement was not in his handwriting and he was not given an opportunity to read over the statement. (*Id.* pg. 163.) Additionally, Francis Jr. had tubes in him, as depicted by the pictures Det. Parker took, and was on medication on the date of the statement. (*Id.* pg. 159.) Furthermore, the jury was aware that, on the night of the shooting, Francis Jr. had been drinking, taking "syrup" and thirty (30) Xanax. (N.T. 6/29/2016, pg. 150-53.) Under these

13

circumstances, the absence of Ms. Davis' testimony did not deprive Appellant of the right to a fair trial.[2]

Because the absence of Ms. Davis' testimony did not deprive Appellant of the right to a fair trial, trial counsel was not ineffective for failing to object to the alleged prosecutorial misconduct. In assessing a claim that counsel was ineffective for not objecting to alleged prosecutorial misconduct, courts assess whether Due Process was violated- whether the misconduct was significant enough to result in the denial of the Appellant's right to a fair trial. **Commonwealth v. Hanible**, 30 A.3d 426 (Pa. 2011) *Id.* at 685 (quoting *Greer v. Miller*, 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (internal quotation marks omitted)). "The touchstone is fairness of the trial, not the culpability of the prosecutor." *Id.* Consideration of claims of prosecutorial misconduct is centered on whether the Appellant was deprived of a fair trial, not a perfect trial. **Commonwealth v. Hairston**, 84 A.3d 657 (2014). In reviewing claims of prosecutorial misconduct, appellate courts focus on whether the Appellant was deprived of a fair trial, not a perfect trial. **Commonwealth v. LaCava**, 666 A.2d 221 (Pa. 1995). Accordingly, the alleged prosecutorial misconduct is not relevant because Appellant was not deprived of a fair trial.

**B. Appellant's claim that trial counsel was ineffective for failing to object to the prosecution's opening and closing statements concerning "threats, intimidation and/or fear" allegedly suffered by the victim is meritless.**

Appellant next claims that trial counsel was Ineffective for failing to object to the prosecution's opening and closing statements concerning fear allegedly suffered by Francis Jr. and on intimidation. (Amended Petition, 16). Appellant claims that the remarks were highly prejudicial, designed to inflame the passions against Appellant, and were not based

---

[2] Moreover, any statements Francis Jr. may have made to Ms. Davis while waiting to testify at Appellants second trial would not have been discovered by trial counsel had he interviewed her prior to trial.

14

upon facts of record. (*Id.,* 18). However, the prosecutor's statements were based upon facts of record and were therefore appropriate.

Appellant raised this issue on direct appeal. There, Appellant complained that "the trial court committed an abuse of discretion by denying a motion for mistrial and an objection after the prosecutor asked the complainant if he stated the previous day he was afraid to testify." *Commonwealth v. Scott*, No. 524 EDA 2017 (Pa. Super, filed February 21, 2019) (unpublished memorandum). The Superior Court found that "the prosecutor's question had a good faith basis, did not accuse [Appellant] of threatening [Francis Jr.], and the question was appropriate redirect examination." *Id.* The Superior Court held that this issue was "frivolous." *Id.*

Moreover, Appellant did not seek allocatur. Accordingly, Appellant had the highest appellate court in which he could have review as a matter of right rule on the merits of this issue. **42 Pa.C.S.A. § 9544(a)(2).** Thus, under the PCRA, Appellant is precluded from post-conviction relief regarding this issue because it was previously litigated and the PCRA court is without jurisdiction to consider its merits. *See Id.* Appellant's attempt to repackage this argument that the Superior Court previously rejected fails. *Commonwealth v. Padden*, 783 A.2d 299, 312 (Pa. Super. 2001) (failed claims do not attain merit "simply by presenting [them] under the guise of ineffective assistance of counsel").

Nevertheless, the prosecutions statements were based upon facts of record. Francis Sr. testified that his son, Francis Jr. was not living in his normal apartment and that he had the help of the witness protection from the District Attorney's Office to arrange to have Francis Jr. moved and living in a different location out of the state (N.T. 6/29/16, 272). Francis Sr. also testified that he spoke to his son the night prior to testifying in which Francis Jr. told his father that he was "scared" (*Id.,* 273-274).

15

A prosecutor is entitled to explain to the jury why a defense is incredible based on the evidence. *See* **Commonwealth v. Jones,** 668 A.2d 491, 514 (Pa. 1995) ("prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair"). Under such circumstances, counsel is not ineffective for declining to object. *See* **Commonwealth v. Miller,** 664 A.2d 1310, 1324 (Pa. 1995) (because the prosecutor's comments were not improper, counsel was not ineffective for failing to object). Because trials are adversary proceedings, the prosecution, like the defense, must be allowed reasonable latitude in advocating its case to the jury. *Id.* Accordingly, prosecutors are entitled to refer to the evidence, to argue all reasonable inferences from that evidence, and to present theirarguments with logical force, vigor and"oratorical flair." **Commonwealth v. Rollins,** 738 A.2d 435,445 (Pa. 1999). The prejudicial effect of a prosecutor's statements are considered in the context in which they were made. **Commonwealth v. Cox,** 728 A.2d 923, 932 (Pa. 1999); **Commonwealth v. Brown,** 911 A.2d 576, 580 (Pa. Super. 2006) ("closing 'argument' is just that: argument").

Additionally, this Court instructed the jury that closing arguments "do not constitute evidence," and further instructed the jury:

> When counsel makes closing arguments what they typically do is review the evidence with you and ask you to draw certain inferences from that evidence. That can be very helpful to you in evaluating this case. I do need you to keep in mind, however, that you are not bound by counsel's recollection of the evidence, nor are you bound by counsel's perspective of what the evidence in this case shows. It is your recollection of the evidence and your recollection alone which must guide your deliberations in this case. In addition, you're not limited, in your consideration of the evidence, to that particular evidence that counsel decides to review with you. You may, if you chose, consider any of the evidence in the case during the trial that you believe to be material to the issues that you have to resolve. Now, to the extent that the arguments made by counsel are properly based upon the evidence and appeal to your

reason and common sense and judgment, then you may consider them in your deliberations.

(N.T. 7/1/16, 6-7.)

These instructions, which the jury is presumed to follow, cured any potential prejudice. **See Commonwealth v. Stokes**, 839 A.2d 226, 244 (Pa. 2003) (trial court's instruction that a prosecutor's comments do not constitute evidence removed any prejudice, as the jury is presumed to follow the court's instructions; counsel was not ineffective for failing to object); **Commonwealth v. Baez**, 720 A.2d 711, 735 (Pa. 1998) (Appellant not prejudiced, as the jury is presumed to follow the trial court's instructions").

Based upon the evidence in this case, the prosecutor's opening and closing remarks were not improper and therefore trial counsel cannot be deemed ineffective for failing to object. **Commonwealth v. Staton**, 120 A.3d 277, 293 (Pa. 2015) ("counsel cannot be deemed ineffective for failing to lodge a meritless objection). Furthermore, any prejudice by such remarks was cured by the jury instruction. **See Stokes.**

### C. Appellant's claim that trial counsel was ineffective for "opening the door to and/or failing to properly object" to the Commonwealth eliciting impermissible testimony about witnesses "going south" in this case and other cases is meritless.

Appellant claims that trial counsel was ineffective for opening the door and/or failing to properly object to the Commonwealth eliciting impermissible testimony about witnesses in this case and other cases "going south" (Amended Petition, 26). Specifically, Appellant claims that trial counsel opened the door to the "highly prejudicial testimony" from Francis Sr. and Detective Parker regarding their voucher for the reliability of unsworn statements to support the "improper and unsupported" inference that Francis Jr. changed his testimony out of fear for his safety (Id., 26-27). Further, Appellant argues that trial counsel was ineffective for not objecting to "statistical evidence" regarding south witnesses from

17

Detective Parker and Assistant District Attorney ("ADA") Brett Furber *(Id.,* 28-34). However, because this evidence was properly admitted, with or without "counsel opening the door," Appellant's claim is meritless.

"The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Johnson*, 615, Pa. 354 at 372, 42 A.3d 1017 at 1027 (Pa. 2012) (citations omitted.)

Here, Appellant complains that this evidence was "highly prejudicial," but does not identify any rule of evidence by which this testimony should have been precluded. (See Amended Motion for Post-Conviction Relief.) Moreover, the problems of witness intimidation in Philadelphia are well-known and well-publicized. Here, Detective Parker's and ADA Furber's testimony regarding their experience with witnesses going south was appropriate and relevant due to the evidence of Francis Jr.'s fear at trial as cited above. Thus, trial counsel was not ineffective for failing to object to admissible evidence. *Commonwealth v. Reid,* 99 A.3d 470, 504 (Pa. 2014) ("trial counsel cannot be deemed ineffective for failing to raise a meritless objection").

### D. Appellant's claim that trial counsel was ineffective for opening the door/failing to object to the prosecutor's questions and comments related to alibi witnesses' failure to speak to police is meritless.

Appellant claims that trial counsel was ineffective for opening the door and/or failing to object to the prosecutor's questions and comments related to alibi witnesses' failure to speak to police (Amended Petition, 35). Specifically, Appellant claims that defense

18

counsel's question "[n]ow, you did not talk to an investigator from the police, is that correct?" opened the door to the following cross-examination of witnesses Stephanie Sharper and Jamal Hairston (*Id.*, 35-38). Further, Appellant claims that trial counsel should have raised the "proper objection" when the questions were asked (*Id.*, 38).

However, the reason(s) alibi witnesses did not provide police statements is proper cross-examination. In **Commonwealth v. Rayner**, 153 A.3d 1049 (Pa. Super 2016), the Superior Court held that a prosecutor did not commit prosecutorial misconduct during his closing argument when he questioned the reliability of alibi witnesses who chose not to speak to police on behalf of their loved one prior to trial. Here, for the jury to evaluate the alibi witnesses' testimony, it was important for the jury to hear why Appellant's mother and friend did not provide a statement or even speak with police following Appellant's arrest. Accordingly, this line of questioning was proper cross-examination of an alibi witness. Thus, trial counsel was not ineffective for not making a frivolous objection to permissible cross-examination. **Commonwealth v. Gwynn**, 943 A.2d 940, 948 (Pa. 2008) (counsel will not be deemed ineffective for failing to raise a baseless objection).

**E. Appellant's claim that his trial counsel was ineffective for stipulating to "materially incorrect facts," failed to object to related prejudicial testimony, and argued in closing about related facts not of record is meritless.**

Appellant claims that trial counsel was ineffective for stipulating to materially incorrect facts, failing to object to related prejudicial testimony, and arguing in closing about related facts not of record (Amended Petition, 40). Specifically, Appellant claims that trial counsel was ineffective for erroneously referencing in his closing bullet fragments recovered and not objecting to the Commonwealth's reference to bullet fragments,

19

arguing that this was not evidence of record. *(Id.)*[3] Appellant's claim ignores the fact that there were four fragments found at the scene, which was apparent from the crime scene sketch marked as Commonwealth exhibit C-12 at trial and referenced by defense counsel during his cross-examination of Detective Parker (N.T. 6/30/16, 90-91; trial exhibit C-12). Thus, because Appellant is mistaken, trial counsel was not ineffective for failing to make the "appropriate" objection. *Commonwealth v. Gwynn,* 943 A.2d 940, 948 (Pa. 2008) (counsel will not be deemed ineffective for failing to raise a baseless objection).

**F. Appellant's claim that his trial counsel was ineffective for failing to object to the prosecution's use of Francis Jr.'s unsworn statements to his father and to Detective Parker while in the hospital to establish Appellant's guilt and for failing to object to the Court's related jury charge is without merit.**

In his direct appeal, Appellant complained that evidence was "insufficient to sustain the jury's verdict because it was predicated solely on hearsay consisting of the out of court statements of [Francis Jr.] and because the Commonwealth failed to corroborate what was contained in [Francis Jr.'s] out of court statements." *Scott supra.* Moreover, Appellant complained that "the verdict was based upon evidence recanted by the complainant." *Id.* The Superior Court found that "[t]his claim overlooks well settled case law and our Rules of Evidence." *Id.* The Superior Court held that "[a]fter the victim's recantation at trial, pursuant to Pa.R.E. 803.1(1) and [*Commonwealth v. Brown,* 52 A.3d 1139, 1168 (Pa. 2012)] [Francis Jr.'s] written statement that was signed and adopted by him, and the victim's preliminary hearing testimony, were admissible as substantive evidence and established the elements of the crimes with which [Appellant] was charged." *Id.* Appellant's attempt to repackage an argument that the Superior Court previously rejected fails. *Commonwealth*

---

[3] Additionally, defendant complains that the Commonwealth did not produce any keys from the crime scene (Amended Petition, 42-43). The keys found at the scene belonged to Gary Jr. as explained in his statement to police and were not pertinent to the issues at trial or exculpatory.

*v. Padden*, 783 A.2d 299, 312 (Pa. Super. 2001) (failed claims do not attain merit "simply by presenting [them] under the guise of ineffective assistance of counsel").

As the Superior Court held in Appellant's direct appeal, this Court properly admitted the victim's prior inconsistent statements for impeachment and substantive purposes. *Scott supra.* The victim recanted the majority of his prior statements to police following the shooting and at Appellant's preliminary hearing and was cross-examined at length regarding those prior inconsistent statements. Because the written statement was contemporaneously recorded and signed by the victim, and the victim gave preliminary hearing testimony under oath, the Commonwealth was permitted to introduce the statement and testimony not only to impeach the witness, but also to prove the truth of the matter asserted. Accordingly, this Court properly allowed the jury to consider the substantive information in those statements. *See, e.g., Commonwealth v. Collins*, 957 A.2d 237, 260-62 (Pa. 2008) (finding that trial court properly admitted witness's prior statement to police and preliminary hearing testimony where witness testified at trial that he had lied to police and at preliminary hearing).

Because the admission of Francis Jr.'s statement and the corresponding instruction were both proper, trial counsel cannot be deemed ineffective for failing to lodge objections to either. *Commonwealth v. Reid*, 99 A.3d 470, 504 (Pa. 2014) ("trial counsel cannot be deemed ineffective for failing to raise a meritless objection").

## G. Appellant's claim of cumulative error is meritless.

Appellant believes that he is entitled to relief based on the cumulative effect of the purported errors raised and cited above (Amended Petition, 58). This claim has long been rejected by the Pennsylvania Supreme Court.

21

It is well-settled that "no number of failed claims may collectively warrant relief if they fail to do so individually." *See Commonwealth v. Tedford*, 960 A.2d 1, 56 (Pa. 2008) ("this Court has repeatedly held that 'no number of failed claims may collectively warrant relief if they fail to do so individually.'"); *Commonwealth v. Washington*, 927 A.2d 586, 617 (Pa. 2007) (same); *Commonwealth v. Lopez*, 854 A.2d 465, 472 (Pa. 2004) (recognizing that "no number of failed claims may collectively attain merit if they could not do so individually"); *Commonwealth v. Bryant*, 855 A.2d 726, 751 (Pa. 2004) (where there were no errors warranting relief in the Appellant's PCRA petition, his allegation of cumulative errors failed).

## V.  CONCLUSION

For the reasons set forth in the foregoing Opinion, the Court recommends that its judgment be affirmed.

DATE: 04/03/2022

BY THE COURT:

THOMAS STREET, SIERRA J.

22